**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC.**<br>**D/B/A ENERGYX**<br>Demandante<br><br>v.<br><br>**THEODORE DILENSCHNEIDER**<br>Demandado | **CIVIL NÚM.:**<br><br>**SOBRE:**<br>**SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO.** |

**DEMANDA**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante de epígrafe, **Energy Exploration Techonologies, Inc d/b/a EnergyX**, por conducto de la representación legal que suscribe y, muy respetuosamente, **EXPONE**:

**I. Partes**

1. La parte demandante, Energy Exploration Technologies, Inc. d/b/a EnergyX ("EnergyX" o la "Compañía"), es una corporación con fines de lucro organizada conforme a las leyes del Estado Libre Asociado de Puerto Rico, inscrita en el Registro de Corporaciones y Entidades del Departamento de Estado bajo el número 419978, activa y vigente, organizada el 18 de diciembre de 2018. Su oficina designada y dirección postal ubican en 1654 Calle Tulipán, Suite 100, San Juan, Puerto Rico 00927.

2. El demandado, Theodore Dilenschneider ("Dilenschneider" o el "Demandado"), es mayor de edad, que vive en los Estados Unidos de América y que por información y creencia su última dirección conocida es 436 Balch Road, Elgin TX 78621. Su teléfono es el 614-519-9977 y su correo electrónico es tjdilen@gmail.com. Dilenschneider mantuvo una relación contractual con EnergyX mediante un Consulting Services Agreement, un Restricted Stock Award Agreement, un Special Equity Incentive Plan y documentos relacionados, y consintió contractualmente a la jurisdicción y foro de los tribunales de Puerto Rico para disputas que surjan de o se relacionen con el Consulting Services Agreement.

**II. Hechos**

**<u>A. El Consulting Services Agreement</u>**

3. En o alrededor de abril de 2019, EnergyX y Dilenschneider suscribieron un Consulting Services Agreement.

4. El Consulting Services Agreement identificó a Dilenschneider como "Consultant" y a EnergyX como "Company". En particular, el contrato dispuso: "THIS CONSULTING SERVICES AGREEMENT (the 'Agreement') is made as of April ___, 2019, by and between THEODORE DILENSCHNEIDER ('Consultant'), and ENERGY EXPLORATION TECHNOLOGIES, INC., a Puerto Rico corporation (the 'Company')."

5. El Consulting Services Agreement reconoció que EnergyX era una corporación de Puerto Rico y describió su giro de negocio. A esos efectos, el acuerdo dispuso: “The Company is a sustainable energy company focussed on lithium extraction technology, forward osmosis and thermal powered desalination.”

6. El Consulting Services Agreement estableció que Dilenschneider deseaba prestar servicios como Chief Scientific Officer de EnergyX, y que EnergyX deseaba contratarlo para esos servicios. El acuerdo dispuso: “Consultant desires to provide services as the Company’s Chief Scientific Officer, and the Company desires to retain Consultant for such services, in each case, on the terms and subject to the conditions set forth in this Agreement.”

7. Bajo la cláusula de “Engagement; Services”, EnergyX contrató a Dilenschneider para prestar los servicios descritos en el Exhibit A del acuerdo. El contrato dispuso: “The Company hereby engages Consultant to provide and perform the services listed on Exhibit A attached hereto (the ‘Services’) to or for the benefit of the Company, and Consultant hereby accepts such engagement with the Company and agrees to provide and perform the Services, upon the terms, covenants and conditions set forth in this Agreement.”

8. El Consulting Services Agreement también dispuso que Dilenschneider serviría en la Junta de Directores de EnergyX por un término de dos años, sujeto a terminación anterior. El contrato estableció: “In addition, Consultant agrees to serve as on the Company’s Board of Directors for a two (2) year term, subject to his earlier resignation, removal, death or disability.”

9. El acuerdo reconoció que Dilenschneider era estudiante graduado en la Universidad de Texas en Austin. A esos efectos, el contrato dispuso: “Consultant currently is a graduate student in the chemical engineering program at, and working for, the University of Texas at Austin (the ‘University’).”

10. Bajo la cláusula de “Duties”, Dilenschneider se obligó a prestar sus servicios de forma diligente y competente. El contrato dispuso: “Consultant shall diligently and competently perform the Services to the best of its ability, and shall devote sufficient business time and energy to the Company so as to diligently perform the Services and its duties hereunder.”

11. El Consulting Services Agreement también requirió que Dilenschneider mantuviera informada a EnergyX sobre el estado de sus servicios y obligaciones. El contrato dispuso: “Consultant will at all times keep the Company reasonably informed as to the status of its Services and other duties and obligations under this Agreement.”

12. Bajo la cláusula de compensación, EnergyX acordó pagar una compensación mensual a Dilenschneider. El contrato dispuso que, durante el término del acuerdo, EnergyX pagaría o causaría que la Universidad pagara a Dilenschneider "a monthly consulting fee in the aggregate amount of Four Thousand Dollars ($4,000)."

13. La compensación accionaria contemplada en el Consulting Services Agreement no fue una concesión inmediata, absoluta o irrestricta de acciones. Por el contrario, el contrato dispuso que cualquier compensación accionaria estaría sujeta a un acuerdo de award separado y a un equity incentive plan.

14. En particular, la cláusula de "Equity" dispuso: "As additional compensation, the Company agrees to issue Consultant restricted preferred stock and restricted common stock in the Company on the terms and conditions of an award agreement to be entered into between Consultant and the Company (an 'Award Agreement') issued pursuant to an equity incentive plan to be adopted by the Company."

15. El Consulting Services Agreement también estableció expresamente que el Award Agreement estaría sujeto a los términos y condiciones del equity incentive plan. El contrato dispuso: "The Award Agreement shall be subject to the terms and conditions of such equity incentive plan."

16. La cláusula de equity contempló que el Award Agreement dispondría para que Dilenschneider recibiera 7,500 acciones, de las cuales 2,500 serían preferred stock con derechos de voto 50x y 5,000 serían common stock. El contrato dispuso: "The Award Agreement will provide for Consultant to receive seven thousand five hundred (7,500) shares of the Company's common stock, of which two thousand five hundred (2,500) shares will be preferred stock with fifty times (50x) voting rights, and five thousand shares (5,000) will be common stock."

17. El Consulting Services Agreement también dispuso que las acciones serían distribuidas bajo un calendario de vesting de cuatro años. El contrato estableció: "The shares will be distributed over a four (4) year vesting schedule, every six (6) months."

18. Por tanto, desde el propio Consulting Services Agreement, cualquier derecho de Dilenschneider a recibir acciones estaba sujeto a condiciones futuras, incluyendo la ejecución de un Award Agreement, la adopción de un equity incentive plan y un calendario de vesting.

19. El Consulting Services Agreement no concedió a Dilenschneider una participación accionaria inmediata, absoluta, irrestricta, permanente, garantizada o no diluible en EnergyX.

20. El Consulting Services Agreement tampoco estableció que Dilenschneider tendría derecho a mantener perpetuamente un porcentaje fijo de EnergyX frente a emisiones, financiamientos, recapitalizaciones, enmiendas corporativas o cambios posteriores en la estructura de capital de la Compañía.

21. La referencia porcentual contenida en la cláusula de equity estaba atada al otorgamiento inicial contemplado en el futuro Award Agreement. El contrato dispuso que "[t]he foregoing gives the Consultant roughly seven and one half percent (7.5%)" basado en que Teague Egan y/o entidades bajo su control sostuvieran aproximadamente 100,000 acciones emitidas y en circulación antes de la emisión de las acciones restringidas de Dilenschneider.

22. El Consulting Services Agreement estableció que Dilenschneider actuaba como contratista independiente, no como empleado de EnergyX. En particular, el contrato dispuso: "The parties hereto acknowledge and agree that Consultant shall act only as an independent contractor under this Agreement."

23. El contrato también dispuso que nada en el acuerdo debía interpretarse como creación de una sociedad, joint venture o relación de empleo. El acuerdo estableció que "neither any act by Consultant or the Company nor anything contained in this Agreement shall be deemed or construed (a) to create a partnership or joint venture between the Company and Consultant or (b) to constitute Consultant as an employee of the Company."

24. El Consulting Services Agreement estableció que el término inicial comenzaría el 15 de abril de 2019 y terminaría al ocurrir el primero de ciertos eventos, salvo terminación anterior conforme a la Sección 7. El contrato dispuso: "The initial term of this Agreement shall commence on April 15, 2019, and shall terminate at the sooner of either (a) the graduation of Consultant from the chemical engineering graduate program at the University, or (b) two (2) years thereafter, unless sooner terminated in accordance with Section 7."

25. La Sección 7 del Consulting Services Agreement autorizó la terminación del acuerdo sin causa mediante notificación escrita previa. El contrato dispuso: "this Agreement may be terminated (a) by either party, without cause, upon not less than thirty (30) business days prior written notice to the other party."

26. La Sección 7 también autorizó la terminación inmediata mediante notificación escrita si la otra parte incumplía obligaciones materiales y no subsanaba el incumplimiento dentro del término aplicable. El contrato dispuso que el acuerdo podía terminarse "at any time by a party

immediately upon written notice to the other party if the other party is in breach or default of any material obligations contained herein which breach or default is not cured within two (2) weeks after written notice from the terminating party."

27. El Consulting Services Agreement limitó los pagos debidos a Dilenschneider luego de la terminación. El contrato dispuso: "Upon termination of this Agreement, Consultant shall be entitled to receive accrued but unpaid amounts due by the Company under Section 3(a) and Section 4 through the date of termination of this Agreement."

28. El contrato también dispuso expresamente: "Except for the foregoing, Consultant shall receive no other payments following termination of this Agreement."

29. El Consulting Services Agreement impuso a Dilenschneider obligaciones de confidencialidad respecto a la información confidencial y propietaria de EnergyX.

30. La Sección 8 definió "Confidential Information" como "trade secrets and other confidential or proprietary information of the Company," incluyendo, entre otras cosas, "financial status and plans," "products," "customer lists," "product development plans," "personnel information" y "trade secrets of the Company."

31. Dilenschneider se obligó a mantener confidencial la información de EnergyX. El contrato dispuso que toda Confidential Information a la que Dilenschneider tuviera acceso o conocimiento "is to be held in strict confidence by Consultant," "is to be used by and under authority of the Company only as authorized in this Agreement," y "shall not be disclosed by Consultant without the prior written consent of the Company or as authorized in this Agreement."

32. El Consulting Services Agreement también impuso confidencialidad sobre los términos del propio acuerdo. En particular, dispuso: "Consultant agrees not to disclose to any third party the terms of this Agreement without the prior written consent of the Company," sujeto a las excepciones allí establecidas.

33. La obligación de confidencialidad sobrevivía la terminación del acuerdo. El contrato dispuso: "Consultant's confidentiality obligations under this Agreement will survive termination of the Agreement and will continue for a period of five years thereafter."

34. El Consulting Services Agreement incluyó una cláusula de Non-Disparagement aplicable a las partes.

35. La cláusula de Non-Disparagement dispuso: "Each party agrees that he or it will not at any time, directly or indirectly, on his or its own behalf or in the service of or on behalf of

others, publish, circulate, utter or disseminate, or cause to be published, circulated, uttered or disseminated, in any manner or by any means whatsoever, to any person or entity, any statements, comments or material whatsoever, which could or would, in any manner whatsoever, either reflect unfavorably upon the reputation of the other party, or harm, damage or impair the business or operations of the other party."

36. El Consulting Services Agreement también incluyó una cláusula remedial específica para incumplimientos reales o amenazados de las cláusulas restrictivas, incluyendo la cláusula de Non-Disparagement.

37. La Sección 13 del contrato dispuso: "Consultant acknowledges that any breach of Sections 8 through 12 of this Agreement (the 'Restrictive Covenants') by Consultant will cause the Company irreparable harm for which there is no adequate legal remedy."

38. La Sección 13 también dispuso que, ante un incumplimiento real o amenazado de las cláusulas restrictivas, EnergyX tendría derecho a remedios interdictales y cumplimiento específico. En particular, el contrato estableció que "in the event of any actual or threatened breach of any Restrictive Covenant, the Company shall be entitled to temporary and permanent injunctive relief and all other appropriate equitable relief (including a decree of specific performance)."

39. La misma cláusula dispuso que EnergyX tendría derecho a esos remedios "without being required to (i) show any actual damage or irreparable harm, (ii) prove the inadequacy of its legal remedies, or (iii) post any bond or other security."

40. El contrato dispuso, además, que si se requiriera fianza para una orden de injunction temporera, dicha fianza no excedería $1,000. En particular, estableció: "Consultant further agrees that in the event a bond or other undertaking is required of the Company in connection with the issuance of a temporary injunction enjoining Consultant from acts claimed by the Company to violate any Restrictive Covenant, such bond or other undertaking shall not exceed One Thousand Dollars ($1,000)."

41. La Sección 13 aclaró que los remedios contractuales eran acumulativos y no exclusivos. El contrato dispuso: "The foregoing remedies of the Company may be exercised without prejudice to (and are cumulative with) the Company's other available rights and remedies at law, in equity, or under this Agreement, including the Company's right to monetary damages arising from any breach of this Agreement by Consultant."

42. El Consulting Services Agreement dispuso que las notificaciones podían cursarse, entre otros medios, por correo electrónico. La Sección 15 estableció que las comunicaciones se entenderían dadas "when sent by email with customary confirmation of receipt during business hours on a business day."

43. El Consulting Services Agreement contiene una cláusula de ley aplicable y selección de foro. En particular, la Sección 16 dispuso: "This Agreement shall be governed by and construed pursuant to the internal laws of the Commonwealth of Puerto Rico without regard to its principles of conflicts of law."

44. La Sección 16 también dispuso que cualquier disputa que surgiera de o se relacionara con el acuerdo se presentaría únicamente en Puerto Rico. El contrato estableció: "Any dispute arising out of or relating to this Agreement shall be brought only in the courts of record of the Commonwealth of Puerto Rico or the court of the United States for the District of Puerto Rico, and each party consents to and confers personal jurisdiction on such courts."

45. El Consulting Services Agreement contiene una renuncia expresa a juicio por jurado. La Sección 17 dispuso: "THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF OR RELATING TO THIS AGREEMENT."

46. La Sección 18(b) dispuso que las Secciones 7 a 18 sobrevivirían la expiración o terminación del Consulting Services Agreement. En particular, el contrato dispuso: "The terms and conditions of Sections 7 through 18 shall survive the expiration or termination of this Agreement."

47. Por tanto, las obligaciones de confidencialidad, no competencia, no solicitación, work product, Non-Disparagement, remedies, governing law, venue, jury waiver y miscellaneous sobrevivieron la terminación del Consulting Services Agreement conforme a sus propios términos.

48. La Sección 18(f) contiene una cláusula de integración y enmienda. El contrato dispuso: "This Agreement constitutes the entire agreement between the parties and shall supersede all other oral or written agreements between the parties, respecting the subject matter of this Agreement."

49. La misma Sección 18(f) dispuso que el Consulting Services Agreement solo podía modificarse o enmendarse mediante instrumento escrito ejecutado por ambas partes. En particular,

el contrato estableció: “This Agreement may only be modified or amended by written instrument executed by both parties.”

50. En consecuencia, cualquier comunicación unilateral posterior, incluyendo una carta posterior a la terminación de servicios, no podía modificar o enmendar el Consulting Services Agreement, salvo que cumpliera con el requisito contractual de ser un instrumento escrito ejecutado por ambas partes.

51. El Exhibit A del Consulting Services Agreement describió los servicios de Dilenschneider. El Exhibit A dispuso: “Consultant shall serve as the Company’s Chief Scientific Officer, and shall manage the operational and financial actions of the Company.”

52. Entre los servicios enumerados en el Exhibit A se incluyeron, entre otros, “Research and development,” “Scalable casting and system integration for mixed matrix membrane,” “Scientific aspects of manufacturing and supply chain,” “Fielding any scientific questions of customers, clients, and partners,” y “Working with CEO on overall general coordination of logistics and operations for Company.”

53. El Consulting Services Agreement, leído en conjunto, demuestra que la relación entre EnergyX y Dilenschneider fue una relación contractual de consultoría, sujeta a términos expresos, incluyendo terminación, confidencialidad, no descrédito, remedios equitativos, ley y foro de Puerto Rico, y una cláusula de integración que impide enmiendas informales o unilaterales.

54. El Consulting Services Agreement también demuestra que cualquier compensación accionaria de Dilenschneider no era automática ni incondicional, sino que estaba sujeta a un Award Agreement separado, a un equity incentive plan, y a un calendario de vesting.

**B. El Restricted Stock Award Agreement**

55. Posteriormente, EnergyX y Dilenschneider suscribieron un Restricted Stock Award Agreement fechado 9 de mayo de 2019.

56. El Restricted Stock Award Agreement identificó a Dilenschneider como “the Grantee” y describió el award como 5,000 acciones comunes y 2,500 acciones preferidas Series A-2 de EnergyX.

57. En particular, el documento identificó el award de la siguiente manera: “Theodore Dilenschneider (the ‘Grantee’)”; “5,000 shares of Common Stock”; “2,500 shares of Series A-2 Preferred Stock”; “(the ‘Company Stock’)”; y “May 9, 2019 (the ‘Grant Date’).”

58. El Restricted Stock Award Agreement reconoció que EnergyX era una corporación organizada bajo las leyes de Puerto Rico. El acuerdo dispuso: "ENERGY EXPLORATION TECHNOLOGIES INC., a Puerto Rico corporation (the 'Company') has adopted the Energy Exploration Technologies, Inc. Special Equity Incentive Plan (the 'Plan') pursuant to which awards of Company Stock (as hereinafter defined) may be granted."

59. El Restricted Stock Award Agreement también reconoció que el award surgía en conexión con el Consulting Agreement suscrito entre las partes. En particular, dispuso: "The Company and the Grantee have entered into that certain Consulting Agreement dated April 15, 2019 (the 'Services Agreement') pursuant to which the Company agreed to grant the award of Company Stock provided for herein."

60. Por tanto, desde su propio texto, el Restricted Stock Award Agreement no fue un documento aislado ni una concesión accionaria libre de condiciones. Fue el instrumento específico que implementó la compensación accionaria contemplada en el Consulting Agreement, sujeto al Special Equity Incentive Plan.

61. La Sección 1 del Restricted Stock Award Agreement, titulada "Grant of Restricted Stock", dispuso que EnergyX emitía a Dilenschneider un "Award of Restricted Stock."

62. Específicamente, la Sección 1 dispuso: "Pursuant to Section 5.1 of the Plan, the Company hereby issues to the Grantee on the Grant Date an Award of Restricted Stock consisting of five thousand (5,000) shares of the Common Stock, and two thousand five hundred (2,500) shares of Preferred Stock (collectively, the 'Company Stock'), on the terms and conditions and subject to the restrictions set forth in this Agreement and the Plan."

63. Esa disposición es material porque confirma que cualquier derecho de Dilenschneider sobre las acciones estaba sujeto a "the terms and conditions" y a las "restrictions" contenidas en el Restricted Stock Award Agreement y en el Plan.

64. La Sección 1 también dispuso que los términos definidos utilizados en el Restricted Stock Award Agreement tendrían el significado asignado en el Plan. En particular, estableció: "Capitalized terms that are used but not defined herein have the meaning ascribed to them in the Plan."

65. La Sección 2 del Restricted Stock Award Agreement identificó la consideración del award. El acuerdo dispuso: "The grant of the Company Stock is made in consideration of the services to be rendered by the Grantee to the Company."

66. Por tanto, el award no fue una transferencia gratuita, absoluta o desvinculada de la prestación de servicios. El award se hizo en consideración a servicios que Dilenschneider debía rendir a EnergyX.

67. La Sección 3 del Restricted Stock Award Agreement gobernó el vesting y el Total Vesting Period.

68. La Sección 3.1 dispuso expresamente que el vesting dependía de que Dilenschneider permaneciera en Continuous Service hasta la fecha aplicable de vesting. El acuerdo estableció: "Except as otherwise provided herein, provided that the Grantee remains in Continuous Service through the applicable vesting date, the Company Stock will vest in accordance with the following schedule."

69. Acto seguido, la Sección 3.1 incluyó el calendario de vesting aplicable al Company Stock. El calendario dispuso:

"Vesting Date Shares of Company Stock

Six months after the Grant Date 12.5% of the Company Stock
Twelve months after the Grant Date 12.5% of the Company Stock
Eighteen months after the Grant Date 12.5% of the Company Stock
Twenty Four months after the Grant Date 12.5% of the Company Stock
Thirty months after the Grant Date 12.5% of the Company Stock
Thirty Six months after the Grant Date 12.5% of the Company Stock
Forty Two months after the Grant Date 12.5% of the Company Stock
Forty Eight months after the Grant Date 12.5% of the Company Stock."

70. El Restricted Stock Award Agreement definió el periodo total de vesting. El acuerdo dispuso: "The period over which the Company Stock vests is referred to as the 'Total Vesting Period'."

71. La Sección 3.1 también estableció una regla específica sobre cuándo se concederían los installments posteriores. El acuerdo dispuso: "Succeeding installments after the installment which vests on the Grant Date shall be granted on the first day of the month, after the indicated number of full months have elapsed."

72. La misma cláusula definió el término "after" para propósitos del cómputo de los meses. En particular, dispuso: "The term 'after' refers to the number of months after the Grant Date, not including the prorated month within which the Grant Date may fall."

73. La Sección 3.1 prohibió expresamente el vesting parcial o proporcional antes de cada fecha aplicable de vesting. El acuerdo dispuso: "There shall be no proportionate or partial vesting in the

periods prior to each vesting date set forth above and all vesting shall occur only on the applicable vesting date."

74. Por tanto, bajo el texto expreso del Restricted Stock Award Agreement, Dilenschneider no podía adquirir una porción proporcional de acciones por haber prestado servicios durante parte de un periodo de vesting.

75. El Restricted Stock Award Agreement también estableció una consecuencia expresa para la terminación del Continuous Service. La Sección 3.1 dispuso: "Notwithstanding anything to the contrary, upon termination of Continuous Service, all unvested Company Stock shall be immediately forfeited."

76. La Sección 3.2 reforzó esa consecuencia y estableció que el forfeiture ocurría automáticamente si el Continuous Service terminaba antes de que todas las acciones hubieran vested.

77. En particular, la Sección 3.2 dispuso: "if the Grantee's Continuous Service terminates for any reason at any time before all of his Company Stock has vested, the Grantee's unvested Company Stock shall be automatically forfeited upon such termination of Continuous Service and neither the Company nor any Affiliate shall have any further obligations to the Grantee under this Agreement."

78. Esa disposición es material porque establece tres consecuencias contractuales: primero, que la terminación del Continuous Service por cualquier razón activaba el forfeiture; segundo, que el forfeiture era automático; y tercero, que EnergyX no tendría obligaciones adicionales con Dilenschneider bajo el Restricted Stock Award Agreement respecto a las acciones no vested.

79. La Sección 3.2 también contempló un supuesto limitado de Change in Control, pero únicamente si el Continuous Service de Dilenschneider no hubiera terminado antes del Change in Control. El acuerdo dispuso: "provided that the Grantee's Continuous Service has not terminated prior to the occurrence of a Change of Control, upon the occurrence of a Change in Control, 100% of the unvested Company Stock shall vest as of the date of the Change in Control."

80. Por tanto, aun el vesting acelerado por Change in Control estaba condicionado a que Dilenschneider permaneciera en Continuous Service antes de dicho evento.

81. La Sección 4 del Restricted Stock Award Agreement impuso restricciones de transferencia sobre el Company Stock y los derechos relacionados.

82. En particular, la Sección 4 dispuso: "Subject to any exceptions set forth in this Agreement or the Plan, during the Total Vesting Period, the Company Stock or the rights relating thereto may not be assigned, alienated, pledged, attached, sold or otherwise transferred or encumbered by the Grantee."

83. La Sección 4 también estableció que cualquier intento de transferir o gravar el Company Stock durante el Total Vesting Period sería nulo e ineficaz. El acuerdo dispuso: "Any attempt to assign, alienate, pledge, attach, sell or otherwise transfer or encumber the Company Stock or the rights relating thereto during the Total Vesting Period shall be null and void and wholly ineffective."

84. La Sección 5.1 del Restricted Stock Award Agreement dispuso que Dilenschneider sería record owner del Company Stock hasta que las acciones fueran vendidas o dispuestas de otra forma, y que tendría derechos de accionista, incluyendo voto y dividendos, sujeto a las demás disposiciones del acuerdo.

85. En particular, la Sección 5.1 estableció: "The Grantee shall be the record owner of the Company Stock until the shares of Company Stock are sold or otherwise disposed of, and shall be entitled to all of the rights of a stockholder of the Company including, without limitation, the right to vote such shares and receive all dividends or other distributions paid with respect to such shares."

86. Sin embargo, la Sección 5.1 también condicionó los dividendos y distribuciones a las mismas restricciones de transferencia. El acuerdo dispuso: "Notwithstanding the foregoing, any dividends or other distributions shall be subject to the same restrictions on transferability as the shares of Company Stock with respect to which they were paid."

87. La Sección 5.2 estableció que EnergyX podía evidenciar el interés de Dilenschneider mediante certificados o una entrada restringida en los libros del transfer agent. El acuerdo dispuso: "The Company may issue stock certificates or evidence the Grantee's interest by using a restricted book entry account with the Company's transfer agent."

88. La Sección 5.2 también dispuso que cualquier certificado físico permanecería bajo posesión o custodia de EnergyX hasta que las acciones vested. El acuerdo estableció: "Physical possession or custody of any stock certificates that are issued shall be retained by the Company until such time as the Company Stock vests."

89. La Sección 5.3 del Restricted Stock Award Agreement resolvió expresamente qué ocurría con los derechos de accionista si Dilenschneider forfeited sus derechos bajo la Sección 3.

90. En particular, la Sección 5.3 dispuso: "If the Grantee forfeits any rights he has under this Agreement in accordance with Section 3, the Grantee shall, on the date of such forfeiture, no longer have any rights as a stockholder with respect to the Company Stock and shall no longer be entitled to vote or receive dividends on such shares."

91. Por tanto, cualquier derecho de Dilenschneider como stockholder respecto al Company Stock estaba expresamente sujeto a las disposiciones de vesting y forfeiture de la Sección 3.

92. La Sección 5.4 del Restricted Stock Award Agreement reconoció que otros accionistas de EnergyX tenían o podían tener derechos, privilegios y preferencias superiores al Company Stock de Dilenschneider.

93. La Sección 5.4 dispuso: "The Grantee acknowledges and agrees that under the Organic Documents certain other stockholders of the Company have and/or may in the future have rights, privileges and preferences, including liquidation preferences, which are senior to the Company Stock."

94. La Sección 5.4 también dispuso que las partes acordaban que el Company Stock no tenía valor al Grant Date. En particular, estableció: "Accordingly, the parties agree that the Company Stock has no value on the Grant Date."

95. La misma cláusula reforzó que el Company Stock estaba sujeto a restricciones de transferencia, forfeiture, el Plan, los documentos orgánicos y otros acuerdos aplicables. El acuerdo dispuso: "All such Company Stock shall be subject to the transferability restrictions and the forfeiture provisions contained in this Agreement and the Plan and are further subject to the transferability restrictions contained in Organic Documents and any employment agreement, consulting agreement or similar agreement presently existing or hereinafter entered into between the Grantee and the Company."

96. La Sección 6 del Restricted Stock Award Agreement dispuso que ni el Plan ni el acuerdo conferían a Dilenschneider derecho alguno a permanecer en una posición con EnergyX.

97. En particular, la Sección 6 estableció: "Neither the Plan nor this Agreement shall confer upon the Grantee any right to be retained in any position, as an employee, consultant or director of the Company."

98. La misma cláusula confirmó la discreción de EnergyX para terminar el Continuous Service de Dilenschneider en cualquier momento. El acuerdo dispuso: "Further, nothing in the Plan or this Agreement shall be construed to limit the discretion of the Company to terminate the Grantee's Continuous Service at any time, with or without Cause."

99. La Sección 7 del Restricted Stock Award Agreement reconoció que cambios en la estructura de capital podían dar lugar a ajustes o terminación de las acciones conforme al Plan. El acuerdo dispuso: "If any change is made to the outstanding capital stock or capital structure of the Company, if required, the shares of Company Stock shall be adjusted or terminated in any manner as contemplated by Section 9 of the Plan."

100. La Sección 10 del Restricted Stock Award Agreement incluyó una opción de recompra a favor de EnergyX en ciertos supuestos.

101. En particular, la Sección 10.1 dispuso que si el Continuous Service de Dilenschneider era terminado for Cause, o si Dilenschneider participaba en Detrimental Activity durante el Continuous Service o dentro del periodo aplicable posterior, EnergyX tendría "the option to purchase all, but not less than all, of the Restricted Stock for a purchase price equal to the par value per share times the number of shares of Company Stock."

102. La Sección 11 del Restricted Stock Award Agreement incluyó derechos de drag-along en caso de ciertas transacciones corporativas.

103. La Sección 11.1 dispuso que, en un Stock Sale Transaction, los Controlling Stockholders podían requerir que Dilenschneider participara en la transacción transfiriendo una porción pro rata de las acciones de Company Stock "which have vested or will vest upon consummation of such Stock Sale Transaction."

104. La Sección 11.2 aclaró que las disposiciones de drag-along no aplicaban a acciones no vested que continuarían no vested al cierre de la transacción. El acuerdo dispuso: "Notwithstanding anything to the contrary, the provisions of this Section 11 shall not apply to any shares of Company Stock that are unvested and will continue to be unvested upon consummation of the Stock Sale Transaction."

105. La Sección 12 del Restricted Stock Award Agreement condicionó la emisión y transferencia de acciones al cumplimiento con leyes estatales y federales de valores y requisitos regulatorios aplicables.

106. En particular, la Sección 12 dispuso: "The issuance and transfer of shares of Company Stock shall be subject to compliance by the Company and the Grantee with all applicable requirements of federal and state securities laws and with all applicable requirements of any stock exchange on which the Company's shares of Common Stock may be listed."

107. La misma cláusula estableció: "No shares of Company Stock shall be issued or transferred unless and until any then applicable requirements of state and federal laws and regulatory agencies have been fully complied with to the satisfaction of the Company and its counsel."

108. La Sección 15 del Restricted Stock Award Agreement seleccionó la ley de Puerto Rico. El acuerdo dispuso: "This Agreement will be construed and interpreted in accordance with the laws of the Commonwealth of Puerto Rico without regard to conflict of law principles."

109. La Sección 16 del Restricted Stock Award Agreement estableció un mecanismo de interpretación vinculante ante el Committee. El acuerdo dispuso: "Any dispute regarding the interpretation of this Agreement shall be submitted by the Grantee or the Company to the Committee for review. The resolution of such dispute by the Committee shall be final and binding on the Grantee and the Company."

110. La Sección 17 del Restricted Stock Award Agreement hizo el acuerdo expresamente sujeto al Plan. En particular, dispuso: "This Agreement is subject to the Plan as approved by the Company's stockholders."

111. La Sección 17 también incorporó el Plan por referencia. El acuerdo dispuso: "The terms and provisions of the Plan as it may be amended from time to time are hereby incorporated herein by reference."

112. La Sección 17 estableció, además, que en caso de conflicto entre el Restricted Stock Award Agreement y el Plan, prevalecería el Plan. El acuerdo dispuso: "In the event of a conflict between any term or provision contained herein and a term or provision of the Plan, the applicable terms and provisions of the Plan will govern and prevail."

113. La Sección 18 del Restricted Stock Award Agreement incluyó una renuncia de derechos estatutarios de inspección hasta el primer ofrecimiento público de acciones comunes de EnergyX.

114. En particular, la Sección 18 dispuso que Dilenschneider "unconditionally and irrevocably waives the Inspection Rights," incluyendo derechos a inspeccionar el stock ledger, lista de accionistas y otros libros y récords de EnergyX, bajo las circunstancias allí descritas.

115. La Sección 21 del Restricted Stock Award Agreement confirmó la naturaleza discrecional del Plan. El acuerdo dispuso: "The Plan is discretionary and may be amended, cancelled or terminated by the Company at any time, in its discretion."

116. La Sección 21 también dispuso que el grant no creaba derecho contractual a recibir acciones futuras u otros awards de equity. En particular, estableció: "The grant of the Company Stock in this Agreement does not create any contractual right or other right to receive any Company Stock or other equity awards in the future."

117. La Sección 22 del Restricted Stock Award Agreement reconoció autoridad para enmendar, alterar, suspender, descontinuar o cancelar el Restricted Stock bajo los términos allí establecidos. El acuerdo dispuso: "The Committee has the right to amend, alter, suspend, discontinue or cancel the Restricted Stock, prospectively or retroactively."

118. La Sección 25 del Restricted Stock Award Agreement obligó a Dilenschneider a convertirse en parte de futuros stockholder agreements si EnergyX lo solicitaba razonablemente. El acuerdo dispuso: "In connection with a future offering of securities or otherwise, the Grantee agrees to become a party to, and to execute and deliver to the Company promptly following request, any Stockholder Agreements reasonably requested by the Company."

119. La Sección 26 del Restricted Stock Award Agreement confirmó que Dilenschneider recibió copia del Plan y del acuerdo, que leyó y entendió sus términos, y que aceptó el Company Stock sujeto a esos términos y condiciones.

120. En particular, la Sección 26 dispuso: "The Grantee hereby acknowledges receipt of a copy of the Plan and this Agreement. The Grantee has read and understands the terms and provisions thereof, and accepts the Company Stock subject to all of the terms and conditions of the Plan and this Agreement."

121. El Exhibit A del Restricted Stock Award Agreement contiene un formulario de elección bajo la Sección 83(b) del Internal Revenue Code.

122. Dicho formulario describió la propiedad como "5,000 shares of restricted Common Stock" y "2,500 shares of restricted Series A-2 Preferred Stock" de EnergyX.

123. El formulario también reconoció que las acciones estaban sujetas a restricciones relacionadas con la prestación continua de servicios. En particular, dispuso: "The Shares are required to be returned to the Company in the event that the undersigned ceases to perform services for the Company through certain dates specified in the Award Agreement between me and the Company dated as of May 9, 2019."

124. El formulario de 83(b) también dispuso que esa restricción lapsaría solo respecto a porciones de las acciones basadas en la prestación continua de servicios. El formulario estableció: "This right lapses with regard to a portion of the Shares based on my continued status as an employee, consultant, scientific advisor or director over time."

125. El formulario de 83(b) también indicó que el fair market value de la propiedad al momento de la transferencia era cero. En particular, dispuso: "The fair market value at the time of transfer, determined without regard to any restriction other than a restriction which by its terms will never lapse, of such property is: $0."

126. El Restricted Stock Award Agreement, leído en conjunto, demuestra que cualquier derecho accionario de Dilenschneider estaba sujeto a condiciones expresas, incluyendo prestación continua de servicios, calendario de vesting, prohibición de vesting parcial o proporcional, forfeiture automático de acciones no vested, restricciones de transferencia, sujeción al Plan, sujeción a los documentos orgánicos y cumplimiento con leyes aplicables de valores.

127. El Restricted Stock Award Agreement no concedió a Dilenschneider una participación accionaria inmediata, absoluta, irrestricta, permanente, garantizada o no diluible en EnergyX.

128. El Restricted Stock Award Agreement tampoco le concedió a Dilenschneider derecho alguno a preservar un porcentaje fijo frente a futuras emisiones, financiamientos, recapitalizaciones, enmiendas corporativas, cambios en la estructura de capital o transacciones corporativas de EnergyX.

129. Por tanto, cualquier comunicación posterior que pretendiera reconocer acciones vested, incluyendo la carta del 8 de noviembre de 2019, no podía modificar las condiciones expresas de vesting, no podía eliminar la condición de Continuous Service, no podía autorizar vesting parcial o proporcional, y no podía dejar sin efecto las disposiciones de forfeiture del Restricted Stock Award Agreement salvo mediante el mecanismo contractual y corporativo correspondiente.

**C. El Special Equity Incentive Plan**

130. El mismo 9 de mayo de 2019, EnergyX adoptó el Energy Exploration Technologies, Inc. Special Equity Incentive Plan.

131. El Special Equity Incentive Plan identificó su nombre formal de la siguiente manera: "The name of this plan is the ENERGY EXPLORATION TECHNOLOGIES, INC. SPECIAL EQUITY INCENTIVE PLAN (the 'Plan')."

132. El Plan identificó a EnergyX como una corporación de Puerto Rico. En particular, dispuso que el propósito del Plan era "to enable Energy Exploration Technologies, Inc., a Puerto Rico corporation (the 'Company'), to attract and retain its Chief Science Officer."

133. El Plan fue limitado y específico. No creó un programa general de equity para múltiples empleados, consultores u oficiales. Por el contrario, el Plan dispuso: "Only the Company's Chief Science Officer, Theodore Dilenschneider, is eligible to receive Awards under the Plan."

134. El Plan también limitó los awards disponibles. En particular, dispuso: "The only Awards that may be granted under the Plan are Restricted Stock."

135. Por tanto, desde su texto inicial, el Plan confirma que cualquier award de Dilenschneider era un award de Restricted Stock, no una emisión absoluta, libre, incondicional o no sujeta a restricciones.

136. La Sección 1.3 del Plan hizo todos los awards sujetos a los documentos orgánicos de EnergyX. En particular, dispuso: "All Awards are subject to the terms and conditions of the Organic Documents."

137. La misma Sección 1.3 estableció que, en caso de conflicto entre el Plan y los documentos orgánicos, prevalecerían los documentos orgánicos. El Plan dispuso: "In the event of a conflict between any term or provision contained herein and a term or provision of the Organic Documents, the applicable terms and provisions of the Organic Documents will govern and prevail."

138. El Plan definió "Award" como "any Award of Restricted Stock under the Plan."

139. El Plan definió "Award Agreement" como "a written agreement evidencing the terms and conditions of an Award granted under the Plan."

140. El Plan también estableció que "[e]ach Award Agreement shall be subject to the terms and conditions of the Plan."

141. Por tanto, el Restricted Stock Award Agreement de Dilenschneider no podía interpretarse aisladamente ni en contradicción con el Plan.

142. El Plan definió "Board" como "the Board of Directors of the Company, as constituted at any time."

143. El Plan definió "Company" como "Energy Exploration Technologies, Inc., a Puerto Rico corporation, and any successor thereto."

144. El Plan definió "Participant" como "Theodore Dilenschneider."

145. El Plan definió "Continuous Service" como que el servicio del participante con EnergyX o una afiliada como Chief Science Officer, o posición equivalente, "is not interrupted or terminated."

146. En particular, el Plan dispuso: "'Continuous Service' means that the Participant's service with the Company or an Affiliate as Chief Science Officer (or equivalent position) is not interrupted or terminated."

147. El Plan añadió que un cambio de capacidad no necesariamente constituiría terminación del Continuous Service, pero solo si no existía interrupción o terminación del servicio como Chief Science Officer o posición equivalente. El Plan dispuso: "The Participant's Continuous Service shall not be deemed to have terminated merely because of a change in the capacity in which the Participant renders service to the Company or an Affiliate or a change in the entity for which the Participant renders such service, provided that there is no interruption or termination of the Participant's Continuous Service as the Chief Science Officer of the Company or an Affiliate."

148. El Plan definió "Preferred Stock" como "the Series A-2 Preferred Stock, $0.00001 par value per share, of the Company."

149. El Plan definió "Restricted Stock" como acciones comunes y preferidas sujetas a restricciones específicas, incluyendo el requisito de que el participante prestara Continuous Service por un periodo determinado.

150. En particular, el Plan dispuso: "'Restricted Stock' means Common Stock and Preferred Stock subject to certain specified restrictions (including, without limitation, a requirement that the Participant provide Continuous Service for a specified period of time) granted under Section 5 of the Plan."

151. Esa definición es material porque confirma que el concepto de Restricted Stock en el Plan incorporaba expresamente restricciones y el requisito de prestación continua de servicios.

152. El Plan también definió "Restrictive Covenant Agreement" como cualquier acuerdo de no competencia, no solicitación, no descrédito u otro acuerdo con cláusulas restrictivas con EnergyX o sus afiliadas.

153. En particular, el Plan dispuso: "'Restrictive Covenant Agreement' means any non-competition, non-solicitation, non-disparagement or other agreement containing restrictive covenants with the Company or its Affiliates."

154. La Sección 3 del Plan reguló su administración.

155. La Sección 3.1 estableció que el Plan sería administrado por el Board. En particular, dispuso: "The Plan shall be administered by the Board."

156. Bajo el Plan, el Board tenía autoridad para interpretar el Plan y aplicar sus disposiciones. La Sección 3.1(a) dispuso que el Board tendría autoridad "to construe and interpret the Plan and apply its provisions."

157. El Board también tenía autoridad para promulgar, enmendar y rescindir reglas y reglamentos relacionados con la administración del Plan. La Sección 3.1(b) dispuso que el Board tendría autoridad "to promulgate, amend, and rescind rules and regulations relating to the administration of the Plan."

158. El Board tenía autoridad para autorizar a una persona a ejecutar instrumentos requeridos para llevar a cabo los propósitos del Plan. La Sección 3.1(c) dispuso que el Board tendría autoridad "to authorize any person to execute, on behalf of the Company, any instrument required to carry out the purposes of the Plan."

159. El Board tenía autoridad para delegar su autoridad a uno o más oficiales de EnergyX. La Sección 3.1(d) dispuso que el Board tendría autoridad "to delegate its authority to one or more officers of the Company."

160. El Board tenía autoridad para determinar cuándo se concederían los awards y la fecha de grant aplicable. La Sección 3.1(e) dispuso que el Board tendría autoridad "to determine when Awards are to be granted under the Plan and the applicable Grant Date."

161. El Board tenía autoridad para determinar el número de acciones de Restricted Stock sujetas a cada award. La Sección 3.1(f) dispuso que el Board tendría autoridad "to determine the number of shares of Restricted Stock to be made subject to each Award."

162. El Board también tenía autoridad para prescribir los términos y condiciones de cada award, incluyendo sus disposiciones de vesting. La Sección 3.1(g) dispuso que el Board tendría autoridad "to prescribe the terms and conditions of each Award, including vesting provisions, and to specify the provisions of the Award Agreement relating to such grant."

163. El Board tenía autoridad para enmendar awards existentes, incluso para modificar el tiempo o la forma de vesting, sujeto a las condiciones del Plan. La Sección 3.1(h) dispuso que el Board tendría autoridad "to amend any outstanding Awards, including for the purpose of modifying the time or manner of vesting, or the term of any outstanding Award."

164. La Sección 3.1(h) añadió que si una enmienda afectaba adversamente derechos del participante, aumentaba sus obligaciones o creaba o aumentaba responsabilidad contributiva federal, dicha enmienda también estaría sujeta al consentimiento del participante.

165. En particular, la Sección 3.1(h) dispuso: "provided, however, that if any such amendment impairs the Participant's rights or increases the Participant's obligations under his or her Award or creates or increases the Participant's federal income tax liability with respect to an Award, such amendment shall also be subject to the Participant's consent."

166. El Board también tenía autoridad para tomar decisiones respecto a awards pendientes en caso de cambio de control corporativo o evento que activara ajustes anti-dilución. La Sección 3.1(i) dispuso que el Board tendría autoridad "to make decisions with respect to outstanding Awards that may become necessary upon a change in corporate control or an event that triggers anti-dilution adjustments."

167. El Board también tenía autoridad para interpretar, administrar, reconciliar inconsistencias, corregir defectos y suplir omisiones en el Plan y en cualquier instrumento o acuerdo relacionado con un award. La Sección 3.1(j) dispuso que el Board tendría autoridad "to interpret, administer, reconcile any inconsistency in, correct any defect in and/or supply any omission in the Plan and any instrument or agreement relating to, or Award granted under, the Plan."

168. El Board también tenía discreción para realizar cualquier determinación necesaria o aconsejable para la administración del Plan. La Sección 3.1(k) dispuso que el Board tendría autoridad "to exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan."

169. La Sección 3.2 estableció que las decisiones del Board bajo el Plan serían finales y vinculantes. En particular, dispuso: "All decisions made by the Board pursuant to the provisions of the Plan shall be final and binding on the Company and the Participant, unless such decisions are determined by a court having jurisdiction to be arbitrary and capricious."

170. Por tanto, cualquier interpretación, modificación, aceleración, ajuste o corrección relacionada con el award de Dilenschneider debía realizarse mediante los mecanismos previstos por el Plan y bajo la autoridad correspondiente del Board.

171. La Sección 4 del Plan estableció las acciones disponibles para grants bajo el Plan.

172. En particular, la Sección 4.1 dispuso: "Subject to adjustment in accordance with Section 9, a total of five thousand (5,000) shares of the Common Stock, and two thousand five hundred (2,500) shares of the Preferred Stock shall be available for the grant of Awards under the Plan."

173. La Sección 4.3 reguló el efecto de awards cancelados, forfeited o expirados. Dispuso que acciones comunes sujetas a un award cancelado, forfeited o expirado podrían volver a estar disponibles para emisión bajo el Plan.

174. En particular, la Sección 4.3 dispuso: "Any shares of Common Stock subject to an Award that is canceled, forfeited or expires prior to exercise or realization, either in full or in part, shall again become available for issuance under the Plan."

175. La misma Sección 4.3 dispuso que acciones preferidas sujetas a un award cancelado, forfeited o expirado no estarían disponibles para reemisión bajo el Plan. En particular, estableció: "Any shares of Preferred Stock subject to an Award that is canceled, forfeited or expires prior to exercise or realization shall not be available for reissuance under the Plan."

176. La Sección 4.5 estableció que las acciones de Restricted Stock sujetas a un award tendrían los derechos, preferencias y privilegios establecidos en los documentos orgánicos. El Plan dispuso: "Any shares of Restricted Stock subject to an Award shall have the rights, preferences and privileges set forth in the Organic Documents."

177. La Sección 5 del Plan reguló los awards de Restricted Stock.

178. El Plan dispuso que un award podía incluir restricciones a venta, cesión, transferencia, disposición, pignoración o hipoteca por el periodo que determinara el Board. En particular, la Sección 5 dispuso: "An Award may, but need not, provide that such Award may not be sold, assigned, transferred or otherwise disposed of, pledged or hypothecated as collateral for a

loan or as security for the performance of any obligation or for any other purpose for such period (the 'Restricted Period') as the Board shall determine."

179. La misma Sección 5 dispuso que cada award estaría sujeto a las condiciones establecidas en dicha sección y a las condiciones adicionales consistentes con el Plan que se reflejaran en el Award Agreement. En particular, estableció: "Each Award shall be subject to the conditions set forth in this Section 5, and to such other conditions not inconsistent with the Plan as may be reflected in the applicable Award Agreement."

180. La Sección 5.1 requirió que Dilenschneider ejecutara y entregara a EnergyX un Award Agreement que estableciera las restricciones y otros términos y condiciones aplicables al Restricted Stock.

181. En particular, la Sección 5.1 dispuso: "The Participant shall execute and deliver to the Company an Award Agreement setting forth the restrictions and other terms and conditions applicable to the Restricted Stock."

182. La Sección 5.1 añadió que si el participante no ejecutaba un acuerdo evidenciando el award, el award sería nulo e inválido. El Plan dispuso: "If the Participant fails to execute an agreement evidencing an Award, the Award shall be null and void."

183. La Sección 5.1 también dispuso que, sujeto a las restricciones del award, el participante generalmente tendría derechos y privilegios de stockholder respecto al Restricted Stock. En particular, dispuso: "Subject to the restrictions set forth in the Award, the Participant generally shall have the rights and privileges of a stockholder as to such Restricted Stock, including the right to vote such Restricted Stock and the right to receive dividends."

184. Esa disposición es material porque los derechos de stockholder bajo el Plan no eran absolutos, sino que estaban sujetos a las restricciones del award.

185. La Sección 5.2(a) del Plan impuso restricciones expresas al Restricted Stock hasta la expiración del Restricted Period.

186. En particular, la Sección 5.2(a) dispuso: "Restricted Stock awarded to the Participant shall be subject to the following restrictions until the expiration of the Restricted Period, and to such other terms and conditions as may be set forth in the applicable Award Agreement."

187. La Sección 5.2(a)(A) dispuso que las acciones estarían sujetas a las restricciones de transferencia contenidas en el Award Agreement. En particular, estableció: "the shares shall be subject to the restrictions on transferability set forth in the Award Agreement."

188. La Sección 5.2(a)(B) dispuso que las acciones estarían sujetas a forfeiture o repurchase según lo dispuesto en el Award Agreement. En particular, estableció: "the shares shall be subject to forfeiture or repurchase to the extent provided in the applicable Award Agreement."

189. La Sección 5.2(a)(C) estableció la consecuencia de forfeiture. El Plan dispuso: "to the extent such shares are forfeited, the stock certificates shall be returned to the Company, and all rights of the Participant to such shares and as a stockholder with respect to such shares shall terminate without further obligation on the part of the Company."

190. Por tanto, bajo el Plan, si acciones sujetas a un award eran forfeited, terminaban todos los derechos del participante sobre dichas acciones y todos sus derechos como stockholder respecto a dichas acciones, sin obligación adicional por parte de EnergyX.

191. La Sección 5.2(b) reconoció la autoridad del Board para remover restricciones sobre el Restricted Stock cuando lo determinara apropiado por cambios en las leyes aplicables u otros cambios en circunstancias posteriores al Grant Date.

192. En particular, la Sección 5.2(b) dispuso: "The Board shall have the authority to remove any or all of the restrictions on the Restricted Stock whenever it may determine that, by reason of changes in Applicable Laws or other changes in circumstances arising after the Grant Date, such action is appropriate."

193. La Sección 5.3 definió el Restricted Period. En particular, dispuso: "The Restricted Period shall commence on the Grant Date and end at the time or times set forth on a schedule established by the Board in the applicable Award Agreement."

194. La misma Sección 5.3 reconoció que el Board podía acelerar el vesting de un award, pero dicha autoridad recaía en el Board. El Plan dispuso: "notwithstanding any such vesting dates, the Board may in its sole discretion accelerate the vesting of any Award at any time and for any reason."

195. La Sección 5.3 añadió que el Board podía, pero no estaba obligado a, establecer aceleración de vesting en el Award Agreement ante un evento especificado. En particular, dispuso: "The Board may, but shall not be required to, provide for an acceleration of vesting in the terms of any Award Agreement upon the occurrence of a specified event."

196. Por tanto, cualquier aceleración de vesting bajo el Plan requería una determinación o disposición autorizada por el Board, no una comunicación unilateral posterior que no cumpliera con los mecanismos del Plan.

197. La Sección 5.4 reguló la entrega de Restricted Stock una vez expirado el Restricted Period. En particular, dispuso: "Upon the expiration of the Restricted Period with respect to any shares of Restricted Stock, the restrictions set forth in Section 5.2(a) and the applicable Award Agreement shall be of no further force or effect with respect to such shares, except as set forth in the applicable Award Agreement."

198. La Sección 5.4 también dispuso que no podía concederse o settled un award por fracciones de acciones. En particular, estableció: "No Award may be granted or settled for a fraction of a share of Restricted Stock."

199. La Sección 6.1 del Plan condicionó los awards al cumplimiento con requisitos aplicables de valores y otras leyes.

200. En particular, la Sección 6.1 dispuso: "No Awards shall be granted under the Plan unless and until the Company and/or the Participant have complied with all applicable federal and state registration, listing and/or qualification requirements and all other requirements of law or of any regulatory agencies having jurisdiction."

201. La Sección 8.1 del Plan reconoció nuevamente la autoridad del Board para acelerar el vesting. El Plan dispuso: "The Board shall have the power to accelerate the time at which an Award may first be exercised or the time during which an Award or any part thereof will vest in accordance with the Plan, notwithstanding the provisions in the Award stating the time at which it may first be exercised or the time during which it will vest."

202. Esa disposición confirma que el poder de acelerar vesting pertenecía al Board, no a una carta posterior ni a una comunicación administrativa no emitida como acción formal del Board.

203. La Sección 8.2 del Plan reguló los derechos de stockholder y dispuso que el participante no sería considerado titular ni tendría derechos de holder respecto a acciones sujetas a un award hasta satisfacer todos los requisitos de exercise o settlement del award conforme a sus términos.

204. En particular, la Sección 8.2 dispuso: "Except as provided in the Plan or an Award Agreement, the Participant shall not be deemed to be the holder of, or to have any of the rights of

a holder with respect to, any shares of Restricted Stock subject to an Award unless and until such Participant has satisfied all requirements for exercise or settlement of the Award pursuant to its terms."

205. La misma Sección 8.2 añadió que dichos requisitos podían incluir la obligación de ejecutar Stockholder Agreements. En particular, el Plan dispuso: "including any obligation to execute the Stockholder Agreements."

206. La Sección 8.3 del Plan dispuso que nada en el Plan o en cualquier instrumento ejecutado o award concedido bajo el Plan confería a Dilenschneider derecho a continuar sirviendo a EnergyX o una afiliada.

207. En particular, la Sección 8.3 dispuso: "Nothing in the Plan or any instrument executed or Award granted pursuant thereto shall confer upon the Participant any right to continue to serve the Company or an Affiliate in the capacity in effect at the time the Award was granted."

208. La Sección 8.3 también confirmó que el Plan no afectaba el derecho de EnergyX o una afiliada a terminar el empleo o servicio correspondiente. En particular, dispuso que el Plan no "shall affect the right of the Company or an Affiliate to terminate" el empleo o servicio bajo las condiciones allí descritas.

209. La Sección 9 del Plan reguló ajustes ante cambios en acciones o estructura de capital.

210. En particular, la Sección 9 dispuso que, ante ciertos cambios en las acciones en circulación o estructura de capital de EnergyX, los awards y award agreements serían equitativamente ajustados o sustituidos "as to the number, price or kind of a share of Common Stock or other consideration subject to such Awards to the extent necessary to preserve the economic intent of such Award."

211. La Sección 10 del Plan reguló el efecto de un Change in Control.

212. La Sección 10.1 dispuso que, ante un Change in Control, el Board podía, pero no estaba obligado a, acelerar, vest o hacer lapse restricciones. En particular, dispuso: "In the event of a Change in Control, the Board may, but shall not be obligated to: (a) accelerate, vest or cause the restrictions to lapse with respect to all or any portion of any Award."

213. La Sección 10.1 también permitió que el Board cancelara awards y pagara a los holders de vested awards el valor de dichos awards, si alguno, según determinado por el Board en su sola discreción. En particular, dispuso que el Board podía "cancel Awards and cause to be paid

to the holders of vested Awards the value of such Awards, if any, as determined by the Board, in its sole discretion."

214. La Sección 10.1 también permitió que el Board proveyera substitute Awards o asumiera o reemplazara awards. En particular, dispuso que el Board podía "provide for the issuance of substitute Awards or the assumption or replacement of such Awards."

215. Por tanto, incluso ante un Change in Control, el Plan no creó vesting automático en todos los casos. El Plan confirió discreción al Board.

216. La Sección 11 del Plan reguló enmiendas al Plan y a los awards.

217. La Sección 11.1 dispuso que el Board podía enmendar o terminar el Plan prospectivamente. En particular, estableció: "The Board at any time, and from time to time, may amend or terminate the Plan on a prospective basis."

218. La Sección 11.4 protegió derechos bajo awards concedidos antes de una enmienda al Plan. En particular, dispuso: "Rights under any Award granted before amendment of the Plan shall not be impaired by any amendment of the Plan unless (a) the Company requests the consent of the Participant and (b) the Participant consents in writing."

219. La Sección 11.5 reguló enmiendas a awards. En particular, dispuso: "The Board at any time, and from time to time, may amend the terms of any one or more Awards."

220. La Sección 11.5 también estableció que el Board no podía realizar una enmienda que afectara derechos bajo un award salvo con solicitud de consentimiento por parte de EnergyX y consentimiento escrito del participante. En particular, dispuso: "provided, however, that the Board may not affect any amendment which would otherwise constitute an impairment of the rights under any Award unless (a) the Company requests the consent of the Participant and (b) the Participant consents in writing."

221. Estas disposiciones confirman que una modificación de los términos del award, incluyendo una modificación de vesting, debía realizarse conforme a la autoridad del Board y, cuando fuera aplicable, mediante consentimiento escrito.

222. La Sección 12.1 del Plan incluyó disposiciones de clawback y forfeiture.

223. En particular, la Sección 12.1 dispuso que el Board podía cancelar un award si el participante incurría en Detrimental Activity. El Plan estableció: "the Board may, in its sole discretion, provide in an Award Agreement or otherwise that the Board may cancel such Award if the Participant has engaged in or engages in any Detrimental Activity."

224. La Sección 12.1 también dispuso que, si el participante recibía una cantidad en exceso de lo que debía recibir bajo los términos del award por cualquier razón, incluyendo error de cálculo o error administrativo, el participante tendría que devolver ese exceso a EnergyX.

225. En particular, la Sección 12.1 dispuso: "if the Participant receives any amount in excess of what the Participant should have received under the terms of the Award for any reason (including, without limitation, by reason of a financial restatement, mistake in calculations or other administrative error), then the Participant shall be required to repay any such excess amount to the Company."

226. La Sección 12.1 también dispuso: "Without limiting the foregoing, all Awards shall be subject to reduction, cancellation, forfeiture or recoupment to the extent necessary to comply with Applicable Laws."

227. Esa disposición es material porque confirma que el Plan contempla expresamente la posibilidad de errores de cálculo o errores administrativos y no convierte tales errores en derechos irrevocables del participante.

228. La Sección 12.2 del Plan autorizó al Board a requerir la ejecución de Stockholder Agreements como condición de grant, vesting o exercise.

229. En particular, dispuso: "In connection with the grant, vesting and/or exercise of any Award under the Plan, the Board may require the Participant to execute and become a party to the Stockholder Agreements as a condition of such grant, vesting and/or exercise."

230. La Sección 12.2 también reconoció que dichos acuerdos podían contener restricciones de transferencia, rights of first refusal, call rights y drag-along rights. En particular, dispuso: "The Stockholder Agreements may contain restrictions on the transferability of shares of Common Stock acquired under the Plan (such as a right of first refusal or a prohibition on transfer) and such shares may be subject to call rights and drag-along rights of the Company and certain of its investors."

231. La Sección 12.5 dispuso que, tras el ejercicio de un derecho concedido bajo el Plan, EnergyX emitiría Restricted Stock o pagaría cantidades adeudadas dentro de un periodo razonable de tiempo, sujeto a obligaciones estatutarias o regulatorias.

232. En particular, la Sección 12.5 dispuso: "Upon exercise of a right granted under this Plan, the Company shall issue Restricted Stock or pay any amounts due within a reasonable period of time thereafter."

233. La Sección 12.6 dispuso que no se emitirían fracciones de acciones bajo el Plan. En particular, estableció: "No fractional shares of Restricted Stock shall be issued or delivered pursuant to the Plan."

234. La Sección 12.7 autorizó que los Award Agreements contuvieran otras disposiciones no inconsistentes con el Plan, incluyendo restricciones al ejercicio de awards. En particular, dispuso: "The Award Agreements authorized under the Plan may contain such other provisions not inconsistent with this Plan, including, without limitation, restrictions upon the exercise of the Awards, as the Board may deem advisable."

235. La Sección 13 del Plan seleccionó la ley de Puerto Rico. En particular, dispuso: "The law of the Commonwealth of Puerto Rico shall govern all questions concerning the construction, validity and interpretation of this Plan, without regard to such state's conflict of law rules."

236. El Plan fue adoptado por la Junta de Directores de EnergyX el 9 de mayo de 2019 y aprobado por sus accionistas en esa misma fecha.

237. En particular, el Plan dispone: "As adopted by the Board of Directors of Energy Exploration Technologies, Inc., on May 9, 2019. As approved by the stockholders of Energy Exploration Technologies, Inc., on May 9, 2019."

238. El Special Equity Incentive Plan, leído en conjunto con el Restricted Stock Award Agreement, confirma que cualquier derecho de Dilenschneider a acciones de EnergyX estaba sujeto a restricciones, Continuous Service, el Award Agreement, los documentos orgánicos de EnergyX, la autoridad del Board, disposiciones de forfeiture, reglas de stockholder rights y cumplimiento con los requisitos aplicables de ley.

239. El Plan no concedió a Dilenschneider una participación accionaria inmediata, absoluta, irrestricta, permanente, garantizada o no diluible en EnergyX.

240. El Plan tampoco concedió a Dilenschneider un derecho automático a aceleración de vesting ni a preservar un porcentaje accionario fijo frente a futuras emisiones, financiamientos, recapitalizaciones, cambios de estructura de capital, enmiendas corporativas o transacciones de EnergyX.

**D. La carta del 8 de noviembre de 2019 y las comunicaciones posteriores no constituyeron una enmienda válida al Consulting Services Agreement, al Restricted Stock Award Agreement ni al Special Equity Incentive Plan**

241. El 8 de noviembre de 2019 se remitió a Dilenschneider una carta titulada "RE: Cessation of Services."

242. La carta fue dirigida a Theodore Dilenschneider y enviada por correo electrónico. En particular, la carta indica: "November 8, 2019"; "Via Email"; "Theodore Dilenschneider"; y "RE: Cessation of Services."

243. La carta no se tituló "Amendment", "Modification", "Waiver", "Acceleration of Vesting", "Board Consent", "Committee Determination", "Award Amendment" ni "Plan Amendment."

244. La carta tampoco expresó que su propósito fuera enmendar el Consulting Services Agreement, el Restricted Stock Award Agreement o el Special Equity Incentive Plan.

245. La carta dispuso: "This will confirm that your Consulting Agreement, dated April 15, 2019, with Energy Exploration Technologies, Inc. (the 'Company') terminated on October 24, 2019."

246. La carta también dispuso: "This will further confirm that you hold 313 vested shares of the Company's Series A-2 Preferred Stock and 625 vested shares of the Company's Common Stock and that you are not entitled to any future vesting of equity securities in the Company."

247. EnergyX reconoce la existencia de la carta del 8 de noviembre de 2019, pero sostiene que la referencia a "313 vested shares" de Series A-2 Preferred Stock y "625 vested shares" de Common Stock fue incorrecta.

248. Dicha referencia reflejó un error de cálculo, interpretación, caracterización o administración respecto al estado del Restricted Stock Award de Dilenschneider.

249. En particular, dicha referencia asumió incorrectamente que una porción del Restricted Stock Award había vested, aun cuando la propia carta confirmaba que el Consulting Services Agreement había terminado el 24 de octubre de 2019.

250. La fecha del 24 de octubre de 2019 es material porque precede cualquier fecha aplicable de vesting bajo el Restricted Stock Award Agreement.

251. Bajo el Restricted Stock Award Agreement, el vesting de cualquier Company Stock estaba condicionado a que Dilenschneider permaneciera en Continuous Service hasta la fecha aplicable de vesting.

252. El Restricted Stock Award Agreement dispuso: "Except as otherwise provided herein, provided that the Grantee remains in Continuous Service through the applicable vesting date, the Company Stock will vest in accordance with the following schedule."

253. El calendario de vesting comenzaba con un primer installment de 12.5% "Six months after the Grant Date."

254. Los números contenidos en la carta —313 acciones preferidas Series A-2 y 625 acciones comunes— corresponden, o aparentan corresponder, a un cálculo de 12.5% del award contemplado en el Restricted Stock Award Agreement.

255. Sin embargo, bajo el Restricted Stock Award Agreement, Dilenschneider no tenía derecho a recibir un porcentaje proporcional o parcial de acciones por haber prestado servicios durante parte de un periodo de vesting.

256. El Restricted Stock Award Agreement prohibió expresamente el vesting proporcional o parcial antes de cada fecha aplicable de vesting.

257. En particular, el Restricted Stock Award Agreement dispuso: "There shall be no proportionate or partial vesting in the periods prior to each vesting date set forth above and all vesting shall occur only on the applicable vesting date."

258. El Restricted Stock Award Agreement también dispuso que, al terminar el Continuous Service, toda acción no vested quedaría inmediatamente forfeited.

259. En particular, el Restricted Stock Award Agreement dispuso: "Notwithstanding anything to the contrary, upon termination of Continuous Service, all unvested Company Stock shall be immediately forfeited."

260. La Sección 3.2 del Restricted Stock Award Agreement reforzó esa consecuencia y dispuso: "if the Grantee's Continuous Service terminates for any reason at any time before all of his Company Stock has vested, the Grantee's unvested Company Stock shall be automatically forfeited upon such termination of Continuous Service and neither the Company nor any Affiliate shall have any further obligations to the Grantee under this Agreement."

261. Por tanto, si el Consulting Agreement terminó el 24 de octubre de 2019, como confirma la carta, Dilenschneider no había permanecido en Continuous Service hasta la primera fecha aplicable de vesting.

262. Como consecuencia, las acciones no vested quedaron sujetas a forfeiture automático bajo el Restricted Stock Award Agreement.

Case 3:26-cv-01709-GMM Document 1-1 Filed 11/04/26 Page 32 of 91



263. Bajo el Restricted Stock Award Agreement, si Dilenschneider forfeited sus derechos bajo la Sección 3, dejaba de tener derechos de stockholder respecto al Company Stock.

264. En particular, la Sección 5.3 dispuso: “If the Grantee forfeits any rights he has under this Agreement in accordance with Section 3, the Grantee shall, on the date of such forfeiture, no longer have any rights as a stockholder with respect to the Company Stock and shall no longer be entitled to vote or receive dividends on such shares.”

265. La carta del 8 de noviembre de 2019 no podía prevalecer sobre las condiciones expresas de vesting, Continuous Service, no partial vesting y forfeiture automático contenidas en el Restricted Stock Award Agreement.

266. La carta del 8 de noviembre de 2019 tampoco podía enmendar el Consulting Services Agreement.

267. El Consulting Services Agreement contiene una cláusula de integración y enmienda. Dicha cláusula dispuso: “This Agreement constitutes the entire agreement between the parties and shall supersede all other oral or written agreements between the parties, respecting the subject matter of this Agreement.”

268. La misma cláusula dispuso: “This Agreement may only be modified or amended by written instrument executed by both parties.”

269. La carta del 8 de noviembre de 2019 no fue ejecutada por ambas partes.

270. La carta del 8 de noviembre de 2019 no fue suscrita por Dilenschneider.

271. La carta del 8 de noviembre de 2019 no contiene lenguaje contractual de modificación o enmienda.

272. La carta del 8 de noviembre de 2019 no identifica causa nueva.

273. La carta del 8 de noviembre de 2019 no expresa intención de sustituir, modificar, renunciar o dejar sin efecto el Consulting Services Agreement.

274. La carta del 8 de noviembre de 2019 no expresa intención de sustituir, modificar, renunciar o dejar sin efecto el Restricted Stock Award Agreement.

275. La carta del 8 de noviembre de 2019 no expresa intención de sustituir, modificar, renunciar o dejar sin efecto el Special Equity Incentive Plan.

276. La carta del 8 de noviembre de 2019 tampoco fue una acción formal del Board o del Committee bajo el Special Equity Incentive Plan.

277. Bajo el Special Equity Incentive Plan, el Board tenía autoridad para interpretar el Plan, aplicar sus disposiciones, prescribir términos y condiciones de awards, modificar el tiempo o forma de vesting, tomar decisiones ante eventos corporativos, corregir defectos, reconciliar inconsistencias y suplir omisiones.

278. En particular, el Plan dispuso que el Board tendría autoridad "to construe and interpret the Plan and apply its provisions."

279. El Plan también dispuso que el Board tendría autoridad "to prescribe the terms and conditions of each Award, including vesting provisions, and to specify the provisions of the Award Agreement relating to such grant."

280. El Plan dispuso, además, que el Board tendría autoridad "to amend any outstanding Awards, including for the purpose of modifying the time or manner of vesting, or the term of any outstanding Award."

281. El Plan también dispuso que el Board tendría autoridad "to interpret, administer, reconcile any inconsistency in, correct any defect in and/or supply any omission in the Plan and any instrument or agreement relating to, or Award granted under, the Plan."

282. El Plan estableció que las decisiones del Board bajo el Plan serían finales y vinculantes. En particular, dispuso: "All decisions made by the Board pursuant to the provisions of the Plan shall be final and binding on the Company and the Participant, unless such decisions are determined by a court having jurisdiction to be arbitrary and capricious."

283. La carta del 8 de noviembre de 2019 no invoca la autoridad del Board.

284. La carta del 8 de noviembre de 2019 no indica que el Board hubiera acelerado el vesting de Dilenschneider.

285. La carta del 8 de noviembre de 2019 no indica que el Board hubiera removido restricciones del Restricted Stock.

286. La carta del 8 de noviembre de 2019 no indica que el Board hubiera corregido, reconciliado o reinterpretado el Award de Dilenschneider.

287. La carta del 8 de noviembre de 2019 no indica que el Board hubiera enmendado el Award Agreement.

288. La carta del 8 de noviembre de 2019 no indica que el Board hubiera renunciado a las disposiciones de forfeiture.

289. La carta del 8 de noviembre de 2019 no indica que el Board hubiera aprobado una emisión independiente de acciones vested a favor de Dilenschneider.

290. El Special Equity Incentive Plan también estableció que el Board podía acelerar el vesting, pero esa autoridad pertenecía al Board y debía ejercerse conforme al Plan.

291. En particular, el Plan dispuso: “The Board shall have the power to accelerate the time at which an Award may first be exercised or the time during which an Award or any part thereof will vest in accordance with the Plan, notwithstanding the provisions in the Award stating the time at which it may first be exercised or the time during which it will vest.”

292. La carta del 8 de noviembre de 2019 no constituye el ejercicio de esa autoridad.

293. La carta del 8 de noviembre de 2019 no dice que el Board ejerció su poder de acelerar vesting.

294. La carta del 8 de noviembre de 2019 no dice que el Board aprobó una aceleración.

295. La carta del 8 de noviembre de 2019 no dice que EnergyX aprobó una enmienda formal al Award Agreement.

296. La carta del 8 de noviembre de 2019 no dice que EnergyX aprobó una enmienda formal al Plan.

297. La carta del 8 de noviembre de 2019 no dice que EnergyX renunció al requisito de Continuous Service.

298. La carta del 8 de noviembre de 2019 no dice que EnergyX renunció a la prohibición de vesting proporcional o parcial.

299. La carta del 8 de noviembre de 2019 no dice que EnergyX renunció al forfeiture automático de acciones no vested.

300. La carta del 8 de noviembre de 2019 no dice que EnergyX otorgó a Dilenschneider una participación accionaria fija, permanente, garantizada o no diluible.

301. La carta del 8 de noviembre de 2019 no dice que EnergyX reconoció a Dilenschneider un derecho anti-dilución.

302. La carta del 8 de noviembre de 2019 no dice que EnergyX reconoció a Dilenschneider una participación de 0.938%.

303. La carta del 8 de noviembre de 2019 no menciona el porcentaje de 0.938%.

304. La carta del 8 de noviembre de 2019 no menciona derechos preferentes adicionales.

305. La carta del 8 de noviembre de 2019 no menciona derechos de inspección.

306. La carta del 8 de noviembre de 2019 no menciona derechos de veto.

307. La carta del 8 de noviembre de 2019 no menciona derechos de aprobación sobre futuras emisiones, financiamientos, recapitalizaciones, enmiendas corporativas o cambios en la estructura de capital de EnergyX.

308. La propia forma en que se transmitió la carta confirma que fue una comunicación administrativa de cesación de servicios, no una enmienda contractual o corporativa.

309. El correo electrónico mediante el cual se transmitió la carta indicó: “Please see attached letter from Teague.”

310. Dicho correo electrónico no expresó que se adjuntaba una enmienda contractual.

311. Dicho correo electrónico no expresó que se adjuntaba una resolución del Board.

312. Dicho correo electrónico no expresó que se adjuntaba una determinación del Committee.

313. Dicho correo electrónico no expresó que se adjuntaba una aceleración formal de vesting.

314. Dicho correo electrónico no expresó que se adjuntaba un waiver de forfeiture.

315. Dicho correo electrónico no expresó que se adjuntaba una modificación del Restricted Stock Award Agreement.

316. Dicho correo electrónico no expresó que se adjuntaba una modificación del Special Equity Incentive Plan.

317. Por tanto, la carta y el correo electrónico de transmisión no satisfacen los requisitos contractuales ni corporativos necesarios para modificar los documentos rectores.

318. Las comunicaciones y documentos posteriores tampoco convirtieron la carta del 8 de noviembre de 2019 en una enmienda válida.

319. El 19 de octubre de 2021, Dilenschneider firmó un documento titulado “Memorandum to EnergyX - Conversion of Founders 2 Preferred Stock.”

320. Ese documento expresó: “In accordance with the Amended and Restated Certificate of Incorporation of Energy Exploration Technologies, Inc. (‘EnergyX’ or ‘Company’) article 4.3.1 Notice of Conversion, I TJ Dilenschneider, provide this written notice to the Company of my election to convert all of my Founders 2 Preferred Stock that being 93,900 issued and outstanding shares into validly issued and outstanding shares of Common Stock of EnergyX.”

321. El documento también expresó: "Based on article 4.1.1. Conversion Ratio, these Founders 2 Preferred Stock issued and outstanding shares of 93,900 will be converted into 93,900 shares of Common Stock of EnergyX at the end of the day that this written notification is signed and dated below."

322. EnergyX sostiene que dicho Memorandum no fue una enmienda al Consulting Services Agreement.

323. EnergyX sostiene que dicho Memorandum no fue una enmienda al Restricted Stock Award Agreement.

324. EnergyX sostiene que dicho Memorandum no fue una enmienda al Special Equity Incentive Plan.

325. EnergyX sostiene que dicho Memorandum no fue una acción formal del Board que corrigiera, ratificara, acelerara o modificara el vesting del Restricted Stock Award de 2019.

326. EnergyX sostiene que dicho Memorandum no convirtió acciones no vested en acciones vested.

327. EnergyX sostiene que dicho Memorandum no curó el error contenido en la carta del 8 de noviembre de 2019.

328. EnergyX sostiene que dicho Memorandum tampoco creó, por sí solo, una participación accionaria fija, garantizada o no diluible de 0.938% en EnergyX.

329. Las comunicaciones de texto de octubre de 2021 tampoco modificaron los documentos rectores.

330. Las comunicaciones de texto reflejan, a lo sumo, comunicaciones informales relacionadas con el envío y firma de documentos.

331. Ninguna comunicación de texto de octubre de 2021 constituye una enmienda formal al Consulting Services Agreement.

332. Ninguna comunicación de texto de octubre de 2021 constituye una enmienda formal al Restricted Stock Award Agreement.

333. Ninguna comunicación de texto de octubre de 2021 constituye una enmienda formal al Special Equity Incentive Plan.

334. Ninguna comunicación de texto de octubre de 2021 constituye una resolución del Board, una determinación del Committee, una aceleración formal de vesting, una renuncia a forfeiture, o una emisión válida de acciones vested contraria a los documentos rectores.

335. De igual modo, una expresión informal en una comunicación de texto no puede sustituir los requisitos contractuales y corporativos establecidos en el Consulting Services Agreement, el Restricted Stock Award Agreement y el Special Equity Incentive Plan.

336. En síntesis, la carta del 8 de noviembre de 2019 fue una comunicación de cesación de servicios que confirmó que el Consulting Services Agreement había terminado el 24 de octubre de 2019, pero que también contenía una referencia errónea a acciones supuestamente vested.

337. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de enmendar los contratos.

338. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de acelerar vesting.

339. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de renunciar al requisito de Continuous Service.

340. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de eliminar la prohibición de vesting parcial o proporcional.

341. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de eliminar el forfeiture automático de acciones no vested.

342. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de crear acciones vested que no habían vested bajo el Restricted Stock Award Agreement y el Special Equity Incentive Plan.

343. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de convertir a Dilenschneider en accionista de EnergyX si los documentos rectores, los libros corporativos y los actos corporativos válidos no reconocen tal condición.

344. Esa referencia errónea no tuvo, ni podía tener, el efecto jurídico de crear una participación accionaria fija, garantizada o no diluible de 0.938% en EnergyX.

345. Por todo lo anterior, existe una controversia real, concreta y justiciable sobre el alcance y efecto jurídico de la carta del 8 de noviembre de 2019, el Memorandum de conversión de 2021 y las comunicaciones informales posteriores.

346. EnergyX solicita que este Honorable Tribunal declare que la carta del 8 de noviembre de 2019 no enmendó el Consulting Services Agreement, no enmendó el Restricted Stock Award Agreement, no enmendó el Special Equity Incentive Plan, no aceleró vesting, no renunció a forfeiture, no creó acciones vested, no creó derechos anti-dilución, no creó una participación accionaria fija de 0.938%, y no convirtió a Dilenschneider en accionista de EnergyX.

## III. CAUSAS DE ACCIÓN

### PRIMERA CAUSA DE ACCIÓN
### SENTENCIA DECLARATORIA

347. EnergyX reproduce e incorpora por referencia los párrafos anteriores como si estuvieran aquí íntegramente transcritos.

348. Existe una controversia real, concreta, sustancial y justiciable entre EnergyX y Dilenschneider sobre la interpretación, validez, alcance y efecto jurídico del Consulting Services Agreement, el Restricted Stock Award Agreement, el Special Equity Incentive Plan, la carta del 8 de noviembre de 2019, el Memorandum de conversión de 2021 y las comunicaciones informales posteriores.

349. La controversia es actual porque Dilenschneider ha reclamado, alegado o amenazado con reclamar que es accionista de EnergyX y que posee derechos accionarios, preferentes, económicos, anti-dilución, de inspección, de voto, de conversión o porcentuales que EnergyX niega.

350. EnergyX sostiene que Dilenschneider no es accionista de EnergyX.

351. EnergyX sostiene que Dilenschneider no posee acciones vested de EnergyX derivadas del Restricted Stock Award Agreement.

352. EnergyX sostiene que Dilenschneider no posee 313 acciones preferidas Series A-2 vested ni 625 acciones comunes vested derivadas del Restricted Stock Award Agreement.

353. EnergyX sostiene que cualquier expresión contenida en la carta del 8 de noviembre de 2019 que sugiera que Dilenschneider sostenía 313 acciones preferidas Series A-2 vested y 625 acciones comunes vested fue errónea.

354. EnergyX sostiene que dicha expresión errónea no tuvo, ni podía tener, el efecto jurídico de enmendar el Consulting Services Agreement, el Restricted Stock Award Agreement o el Special Equity Incentive Plan.

355. EnergyX sostiene que dicha expresión errónea no tuvo, ni podía tener, el efecto jurídico de acelerar vesting.

356. EnergyX sostiene que dicha expresión errónea no tuvo, ni podía tener, el efecto jurídico de renunciar al requisito de Continuous Service.

357. EnergyX sostiene que dicha expresión errónea no tuvo, ni podía tener, el efecto jurídico de eliminar la prohibición contractual de vesting parcial o proporcional.

358. EnergyX sostiene que dicha expresión errónea no tuvo, ni podía tener, el efecto jurídico de dejar sin efecto el forfeiture automático de acciones no vested.

359. EnergyX sostiene que, bajo los documentos rectores, Dilenschneider no permaneció en Continuous Service hasta la fecha aplicable de vesting.

360. EnergyX sostiene que, al terminar el Consulting Services Agreement el 24 de octubre de 2019, cualquier acción no vested quedó automáticamente forfeited conforme al Restricted Stock Award Agreement y al Special Equity Incentive Plan.

361. EnergyX sostiene que la carta del 8 de noviembre de 2019 no fue ejecutada por ambas partes, no fue una enmienda contractual, no fue una resolución del Board, no fue una determinación del Committee, no fue una aceleración formal de vesting y no fue una renuncia válida a las disposiciones de forfeiture.

362. EnergyX sostiene que el Memorandum de conversión de 2021 tampoco fue una enmienda al Consulting Services Agreement, al Restricted Stock Award Agreement o al Special Equity Incentive Plan.

363. EnergyX sostiene que el Memorandum de conversión de 2021 no corrigió, ratificó, validó ni convirtió en vested acciones que no habían vested bajo los documentos rectores.

364. EnergyX sostiene que las comunicaciones informales posteriores, incluyendo comunicaciones de texto, tampoco constituyeron una enmienda válida al Consulting Services Agreement, al Restricted Stock Award Agreement o al Special Equity Incentive Plan.

365. EnergyX sostiene que ninguna comunicación informal posterior podía sustituir los requisitos contractuales y corporativos aplicables para modificar el award, acelerar vesting, renunciar a forfeiture o emitir acciones vested a favor de Dilenschneider.

366. EnergyX sostiene que Dilenschneider no posee una participación accionaria fija, garantizada, permanente o no diluible de 0.938% en EnergyX.

367. EnergyX sostiene que Dilenschneider no posee derechos anti-dilución que obliguen a EnergyX a preservar un porcentaje accionario fijo frente a emisiones, financiamientos, recapitalizaciones, enmiendas corporativas, conversiones, cambios en la estructura de capital o transacciones corporativas posteriores.

368. EnergyX sostiene que Dilenschneider no posee derechos preferentes, derechos de inspección, derechos de veto, derechos de aprobación, derechos de información, derechos

económicos o derechos corporativos excepto aquellos que, si alguno, surjan expresamente de documentos corporativos válidos y vigentes de EnergyX.

369. La incertidumbre sobre la condición accionaria reclamada por Dilenschneider afecta a EnergyX, sus libros corporativos, su estructura de capital, sus relaciones con inversionistas, sus relaciones comerciales, su reputación, sus procesos de financiamiento y su capacidad de responder a terceros sobre su capitalización.

370. La sentencia declaratoria solicitada pondrá fin a la controversia o, como mínimo, despejará la incertidumbre sustancial que existe entre las partes sobre la interpretación y efecto jurídico de los documentos contractuales y corporativos aplicables.

371. Procede que este Honorable Tribunal dicte sentencia declaratoria estableciendo que la carta del 8 de noviembre de 2019 no enmendó el Consulting Services Agreement, no enmendó el Restricted Stock Award Agreement, no enmendó el Special Equity Incentive Plan, no aceleró vesting, no renunció a forfeiture, no creó acciones vested, no creó derechos anti-dilución, no creó una participación accionaria fija de 0.938%, y no convirtió a Dilenschneider en accionista de EnergyX.

372. Procede, además, que este Honorable Tribunal declare que Dilenschneider no es accionista de EnergyX y que no posee los derechos accionarios, económicos, preferentes, anti-dilución, de inspección, de voto, de conversión o porcentuales que reclama o amenaza con reclamar.

## SEGUNDA CAUSA DE ACCIÓN
## INCUMPLIMIENTO CONTRACTUAL, CUMPLIMIENTO ESPECÍFICO Y NON-DISPARAGEMENT

373. EnergyX reproduce e incorpora por referencia los párrafos anteriores como si estuvieran aquí íntegramente transcritos.

374. El Consulting Services Agreement es un contrato válido y vinculante entre EnergyX y Dilenschneider.

375. El Consulting Services Agreement contiene cláusulas restrictivas que obligan a Dilenschneider, incluyendo obligaciones de confidencialidad, no descrédito y otras obligaciones relacionadas con la protección de EnergyX, su reputación, sus negocios y sus operaciones.

376. La cláusula de Non-Disparagement obliga a Dilenschneider a no publicar, circular, expresar, diseminar o causar que se publique, circule, exprese o disemine, directa o indirectamente,

declaraciones, comentarios o materiales que reflejen desfavorablemente sobre la reputación de EnergyX o que dañen, perjudiquen o menoscaben sus negocios u operaciones.

377. Dicha obligación contractual no es una prohibición general de expresión. Es una obligación contractual específica, voluntariamente pactada, que limita la capacidad de Dilenschneider de desacreditar contractualmente a EnergyX o de dañar sus negocios u operaciones mediante declaraciones o materiales prohibidos por el contrato.

378. El Consulting Services Agreement también reconoce que cualquier incumplimiento real o amenazado de las cláusulas restrictivas por parte de Dilenschneider ocasionaría daño irreparable a EnergyX para el cual no existe remedio adecuado en ley.

379. El Consulting Services Agreement reconoce, además, que EnergyX tiene derecho a remedios interdictales temporeros y permanentes, cumplimiento específico y otros remedios equitativos apropiados ante cualquier incumplimiento real o amenazado de dichas cláusulas restrictivas.

380. Dilenschneider ha reclamado o amenazado con reclamar públicamente derechos accionarios que EnergyX niega.

381. Dilenschneider ha reclamado o amenazado con utilizar la carta del 8 de noviembre de 2019, el Memorandum de conversión de 2021, comunicaciones informales posteriores o interpretaciones erróneas de los documentos contractuales para sostener que es accionista de EnergyX o que posee derechos accionarios que EnergyX niega.

382. EnergyX tiene un interés contractual, comercial y reputacional legítimo en evitar que Dilenschneider utilice dichas reclamaciones disputadas para emitir declaraciones a la prensa, inversionistas, socios estratégicos, clientes, proveedores, competidores o terceros que reflejen desfavorablemente sobre la reputación de EnergyX, dañen sus negocios u operaciones, o interfieran con sus relaciones comerciales o de financiamiento.

383. EnergyX también tiene un interés legítimo en evitar que Dilenschneider emita declaraciones públicas o privadas a terceros que presenten como hecho establecido una condición accionaria, un porcentaje accionario, un derecho anti-dilución o un derecho corporativo que está en disputa y que EnergyX niega.

384. Cualquier declaración, comunicación, publicación, entrevista, comunicado, contacto con prensa, contacto con inversionistas o comunicación a terceros que desacredite a EnergyX, afecte su reputación, perjudique sus operaciones, interfiera con sus relaciones

comerciales o presente falsamente a Dilenschneider como accionista o titular de derechos accionarios inexistentes constituiría una violación de la cláusula de Non-Disparagement y de las obligaciones contractuales de Dilenschneider.

385. EnergyX no cuenta con un remedio adecuado en ley para evitar el daño reputacional, comercial, operacional y financiero que puede causar una violación real o amenazada de la cláusula de Non-Disparagement.

386. El daño causado por comunicaciones públicas o privadas a terceros, prensa, inversionistas, socios estratégicos o clientes no puede repararse plenamente mediante una indemnización monetaria posterior.

387. Procede que este Honorable Tribunal ordene a Dilenschneider cumplir específicamente con la cláusula de Non-Disparagement y con las demás obligaciones restrictivas aplicables bajo el Consulting Services Agreement.

388. Procede, además, que este Honorable Tribunal ordene a Dilenschneider abstenerse de publicar, circular, expresar, diseminar o causar que se publique, circule, exprese o disemine, directa o indirectamente, cualquier declaración, comentario o material que refleje desfavorablemente sobre la reputación de EnergyX, o que dañe, perjudique o menoscabe sus negocios u operaciones, incluyendo comunicaciones a la prensa, inversionistas, socios estratégicos, clientes, proveedores, competidores o terceros.

389. EnergyX solicita que cualquier orden sea redactada en términos específicos y limitada al cumplimiento de las obligaciones contractuales pactadas entre las partes, sin constituir una prohibición general de expresión ni impedir comunicaciones legítimas que no violen el Consulting Services Agreement.

390. EnergyX se reserva el derecho de reclamar daños contractuales, costas, gastos y cualquier otro remedio que proceda en derecho o equidad por cualquier incumplimiento real, amenaza de incumplimiento o incumplimiento continuado de las obligaciones contractuales de Dilenschneider.

## TERCERA CAUSA DE ACCIÓN
## EN LA ALTERNATIVA: SENTENCIA DECLARATORIA, EJERCICIO DE OPCIÓN DE RECOMPRA Y CUMPLIMIENTO ESPECÍFICO

391. EnergyX reproduce e incorpora por referencia todas las alegaciones anteriores como si estuvieran aquí íntegramente transcritas.

392. EnergyX presenta esta causa de acción estrictamente en la alternativa y sin renunciar, limitar o menoscabar su posición principal de que Dilenschneider no adquirió acciones vested, no conserva interés propietario alguno en EnergyX y no es accionista de la Compañía.

393. En la eventualidad de que este Honorable Tribunal determine que Dilenschneider adquirió o conserva alguna acción o interés accionario derivado del Restricted Stock Award Agreement, EnergyX sostiene que dichas acciones no constituyen valores libres de las condiciones contractuales que dieron lugar a su emisión.

394. Cualquier acción que el Tribunal determine que pertenece a Dilenschneider tuvo su origen exclusivo en el Restricted Stock Award Agreement y en el Special Equity Incentive Plan y, por tanto, permanece sujeta a las disposiciones aplicables de dichos documentos, incluyendo sus restricciones de transferencia, ajustes, derechos de recompra, clawback, forfeiture y cumplimiento específico.

395. La Sección 10 del Restricted Stock Award Agreement, titulada "Repurchase Option", concedió expresamente a EnergyX una opción contractual para readquirir la totalidad del Restricted Stock de Dilenschneider al ocurrir determinados eventos.

396. En particular, la Sección 10.1 dispuso: "In the event of the Grantee's Continuous Service is terminated for Cause or in the event the Grantee engages in a Detrimental Activity during Continuous Service or during the one (1) year period thereafter (or such shorter period of restriction set forth in the agreement prohibiting the Detrimental Activity), the Company shall have the option to purchase all, but not less than all, of the Restricted Stock for a purchase price equal to the par value per share times the number of shares of Company Stock."

397. Por tanto, si el Tribunal determina que existían acciones vested a favor de Dilenschneider, dichas acciones estaban sujetas a la opción de recompra cuando su Continuous Service terminara for Cause o cuando incurriera en Detrimental Activity dentro del periodo contractualmente establecido.

398. El Special Equity Incentive Plan definió "Detrimental Activity" de manera amplia para incluir, entre otras conductas: la divulgación no autorizada de información confidencial o propietaria; cualquier conducta que hubiera constituido fundamento para terminar sus servicios for Cause; el incumplimiento de un Restrictive Covenant Agreement; fraude; conducta relacionada con irregularidades financieras; y cualquier acto que el Board determinara que era materialmente perjudicial, detrimental o adverso a los intereses de EnergyX o sus afiliadas.

399. Según información y creencia, Dilenschneider se comunicó directa o indirectamente con representantes, periodistas y editores de **TXK Today** y el **Texarkana**

**Gazette**, medios de comunicación con circulación en la región donde EnergyX mantiene operaciones, y les suministró información, declaraciones y acusaciones adversas contra EnergyX y sus oficiales. Mediante dichas comunicaciones, Dilenschneider promovió y causó la publicación de artículos que presentan a EnergyX como una compañía que lo expulsó injustamente durante una crisis de salud, redujo indebidamente su participación accionaria, lo privó de derechos corporativos, ocultó información material y actuó de manera engañosa respecto a sus alegadas acciones. Tales manifestaciones fueron efectuadas con el propósito o, cuando menos, con el efecto previsible de reflejar desfavorablemente sobre la reputación, integridad, gobierno corporativo y operaciones de EnergyX, así como de perjudicar sus relaciones con inversionistas, socios comerciales, entidades gubernamentales y las comunidades en las cuales opera.

400. La divulgación y promoción extrajudicial de tales acusaciones constituye un incumplimiento de la obligación de Non-Disparagement asumida por Dilenschneider, pues este publicó, circuló, expresó, diseminó o causó que se publicaran y diseminaran declaraciones y materiales capaces de reflejar desfavorablemente sobre EnergyX y de dañar, perjudicar o menoscabar sus negocios y operaciones.

401. La anterior conducta constituye, además, Detrimental Activity bajo el Special Equity Incentive Plan, por cuanto representa el incumplimiento de un Restrictive Covenant Agreement y una actuación materialmente perjudicial, detrimental y adversa a los intereses comerciales y reputacionales de EnergyX.

402. En particular, la Sección 10.2 dispuso que EnergyX podía ejercer su derecho a comprar el Company Stock cuando la recompra estuviera fundamentada en Detrimental Activity, dentro de un año luego de que los altos ejecutivos de la Compañía adquirieran conocimiento efectivo de dicha actividad.

403. En la medida en que esta Demanda se presente dentro del periodo contractual aplicable, EnergyX manifiesta inequívocamente mediante este escrito su decisión de ejercer la opción de recompra sobre la totalidad y no menos de la totalidad de las acciones que el Tribunal determine que pertenecen a Dilenschneider y que se encuentran sujetas a la Sección 10.

404. Conforme a la Sección 10.1, el precio contractual de recompra será el valor par aplicable por acción, multiplicado por el número total de acciones sujetas a la opción de recompra.

405. La Sección 10.3 requiere que, al cierre de la recompra, Dilenschneider represente que es el único titular de las acciones, que estas se encuentran libres de gravámenes o reclamaciones de

terceros, y que entregue a EnergyX o al comprador designado las acciones y todos los documentos e instrumentos necesarios para efectuar su transferencia.

406. La misma disposición requiere que EnergyX pague el precio contractual de recompra en fondos inmediatamente disponibles al momento del cierre. EnergyX está preparada, dispuesta y capacitada para pagar el precio de recompra que corresponda conforme al contrato.

407. El Special Equity Incentive Plan reconoció expresamente que EnergyX conservaría los derechos de recompra establecidos en los Stockholder Agreements o en cualquier Award Agreement.

408. El Plan también dispuso que, ante stock splits, recapitalizaciones, reorganizaciones, conversiones, intercambios u otros cambios en la estructura de capital, los awards y los acuerdos relacionados serían ajustados o sustituidos en la medida necesaria para preservar el propósito económico del award.

409. En consecuencia, EnergyX sostiene que cualquier acción que haya resultado de una conversión, ajuste, recapitalización, sustitución, intercambio o reclasificación de las acciones originalmente contempladas en el Restricted Stock Award Agreement permanece sujeta, en la medida correspondiente, a las restricciones y derechos contractuales que gravaban las acciones originales.

410. Lo anterior incluye, sin limitarse a ello, cualesquiera acciones que el Tribunal determine que se derivaron de las 313 acciones Series A-2 Preferred Stock y de las 625 acciones Common Stock mencionadas en la carta del 8 de noviembre de 2019, así como las 93,900 acciones mencionadas en el memorando de conversión de 2021 o cualesquiera acciones emitidas, convertidas, ajustadas o sustituidas en relación con estas.

411. Dilenschneider no ha entregado voluntariamente las acciones, certificados, anotaciones registrales, autorizaciones o instrumentos necesarios para consumar la transferencia.

412. Existe, por tanto, una controversia real, concreta y justiciable respecto a la existencia, alcance, vigencia y ejercicio de la opción contractual de recompra de EnergyX.

413. EnergyX tiene derecho a que este Honorable Tribunal declare que, en la alternativa de determinar que Dilenschneider posee acciones derivadas del Restricted Stock Award Agreement, dichas acciones permanecen sujetas a la opción de recompra establecida en la Sección 10, siempre que se hayan satisfecho los eventos activadores y los requisitos temporales y de notificación allí establecidos.

414. EnergyX tiene derecho, además, al cumplimiento específico de la opción de recompra, pues la controversia versa sobre la titularidad y transferencia de acciones de una corporación privada, la composición de su capital, sus registros corporativos y sus relaciones de gobierno corporativo.

415. Procede que el Tribunal ordene a Dilenschneider transferir a EnergyX, o a uno o más accionistas designados por EnergyX conforme a la Sección 10.2, la totalidad de las acciones sujetas a la opción de recompra.

416. Procede que el Tribunal ordene a Dilenschneider ejecutar y entregar todos los certificados, poderes, endosos, asignaciones, representaciones, garantías y demás documentos necesarios para efectuar la transferencia y permitir la correspondiente corrección del stock ledger, los book-entry records, los capitalization records y los demás registros corporativos de EnergyX.

417. En caso de que Dilenschneider se niegue a ejecutar los instrumentos necesarios, procede que la Sentencia disponga que esta tendrá el mismo efecto jurídico que la correspondiente asignación, transferencia o endoso y autorice a EnergyX, a su secretario corporativo y a cualquier transfer agent a registrar la recompra y transferencia conforme a sus términos.

418. EnergyX solicita que se le permita pagar directamente o consignar en el Tribunal el precio contractual de recompra y que, una vez pagado o consignado dicho precio, se declaren extinguidos todos los derechos de Dilenschneider sobre las acciones readquiridas.

419. Por consiguiente, en la alternativa de que el Tribunal determine que Dilenschneider posee alguna acción o interés accionario en EnergyX, procede que dicte sentencia declarando y haciendo cumplir el derecho de EnergyX a readquirir la totalidad de las acciones sujetas a la opción contractual de recompra.

**POR LOS FUNDAMENTOS ANTES EXPUESTOS,** solicita muy respetuosamente de este Honorable Tribunal que declare CON LUGAR la presente solicitud y:

1. Dicte sentencia declaratoria estableciendo que la carta del 8 de noviembre de 2019 no constituyó una enmienda válida al Consulting Services Agreement, al Restricted Stock Award Agreement ni al Special Equity Incentive Plan;
2. Dicte sentencia declaratoria estableciendo que la carta del 8 de noviembre de 2019 no aceleró vesting, no renunció al requisito de Continuous Service, no eliminó la prohibición de vesting parcial o proporcional, no dejó sin efecto las disposiciones de forfeiture, y no creó acciones vested a favor de Dilenschneider;
3. Dicte sentencia declaratoria estableciendo que Dilenschneider no es accionista de EnergyX y que no posee las acciones, derechos preferentes, derechos anti-dilución, derechos de inspección, derechos de voto, derechos económicos, derechos de

conversión, derechos porcentuales o participación accionaria fija, garantizada o no diluible que reclama o amenaza con reclamar;

4. Dicte sentencia declaratoria estableciendo que Dilenschneider no posee una participación accionaria fija, garantizada, permanente o no diluible de 0.938% en EnergyX;
5. Ordene a Dilenschneider cumplir específicamente con la cláusula de Non-Disparagement contenida en el Consulting Services Agreement;
6. Ordene a Dilenschneider abstenerse de representarse ante terceros como accionista de EnergyX, o como titular de derechos accionarios, preferentes, anti-dilución, económicos, de inspección, de voto, de conversión o porcentuales de EnergyX, salvo que dicha representación sea requerida por orden judicial, proceso legal aplicable o autorización expresa de este Honorable Tribunal;
7. Condene a Dilenschneider al pago de costas, gastos y honorarios de abogado, según proceda en derecho, contrato o equidad; y
8. Conceda cualquier otro remedio declaratorio, contractual, interdictal, equitativo o legal que este Honorable Tribunal estime justo y procedente.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, 22 de julio de 2026.

**PEDRO ORTIZ ÁLVAREZ, LLC**
Apartado 9009
Ponce, Puerto Rico 00732-9009
Tel. (787) 841-7575
Fax (787) 841-0000

**f/ Joel Andrews Cosme Morales**
R.U.A. Núm. 22,607
Email: joel.cosme@poalaw.com

**COLÓN SERRANO ZAMBRANA, LLC**
PO Box 360610
San Juan, PR 00936-0610
(787) 919-0026
felix@csz.law

***f/ Félix A. Colón-Serrano***
**Félix A. Colón-Serrano**
TSPR 17438

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**<br>Demandante<br><br>v.<br><br>**THEODORE DILENSCHNEIDER**<br>Demandado | **CIVIL NÚM.: SJ2026CV06145**<br><br>**SOBRE:**<br>**SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO.** |

**SOLICITUD DE EMPLAZAMIENTO POR EDICTO**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante de epígrafe, **Energy Exploration Techonologies, Inc d/b/a EnergyX**, por conducto de la representación legal que suscribe y, muy respetuosamente, **EXPONE**:

1. El 22 de julio de 2026, EnergyX presentó la Demanda de epígrafe contra Theodore Dilenschneider ("Dilenschneider" o el "Demandado"), en la cual solicita remedios de sentencia declaratoria, incumplimiento de contrato, cumplimiento específico y demás remedios contractuales, interdictales, equitativos y legales que procedan.

2. Según surge de la Demanda, Dilenschneider es una persona mayor de edad que reside y se encuentra fuera de Puerto Rico, específicamente en los Estados Unidos de América.

3. Conforme a la información disponible y a los récords de EnergyX, la última dirección física o postal conocida del Demandado es la siguiente THEODORE DILENSCHNEIDER, 436 Balch Road, Elgin, Texas 78621.

4. La Regla 4.6(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 4.6(a), autoriza el emplazamiento mediante edicto cuando la persona que debe ser emplazada se encuentra fuera de Puerto Rico. La propia Regla 4.6(a) dispone expresamente que no se requerirá un diligenciamiento negativo como condición para que el Tribunal autorice el emplazamiento mediante edicto.

5. Según la información y los récords disponibles para la Compañía, Dilenschneider reside y se encuentra fuera de Puerto Rico y que su última dirección conocida es 436 Balch Road, Elgin, Texas 78621. Se anejan dos documentos corporativos donde aparece la precitada dirección como la dirección del demandado.

6. Por tanto, tanto de la Demanda como de los anejos confidenciales que se acompaña surge el cumplimiento de los requisitos establecidos por la Regla 4.6(a) de Procedimiento Civil para autorizar el emplazamiento mediante edicto.

7. EnergyX solicita que el Tribunal ordene que el emplazamiento por edicto sea publicado una sola vez en un periódico de circulación general en Puerto Rico, conforme exige la Regla 4.6(a).

8. EnergyX se compromete a que, dentro de los diez días siguientes a la publicación del edicto, se remita a Dilenschneider copia del emplazamiento y de la Demanda, mediante correo certificado con acuse de recibo o mediante cualquier otra forma autorizada de entrega de correspondencia con acuse de recibo, a su última dirección conocida:

THEODORE DILENSCHNEIDER
436 Balch Road
Elgin, Texas 78621

15. EnergyX solicita, además, que la Secretaría expida el correspondiente Emplazamiento por Edicto con el contenido exigido por la Regla 4.6(b) de Procedimiento Civil, incluyendo el término aplicable para contestar la Demanda y las advertencias correspondientes sobre la anotación de rebeldía y la posible concesión de los remedios solicitados sin más citarle ni oírle.

16. Junto con esta moción se presenta un proyecto de orden y el correspondiente proyecto de Emplazamiento por Edicto para la consideración del Tribunal.

POR TODO LO CUAL, Energy Exploration Technologies, Inc. d/b/a EnergyX solicita respetuosamente que este Honorable Tribunal:

A. Declare HA LUGAR la presente Moción;

B. Autorice el emplazamiento de Theodore Dilenschneider mediante edicto, conforme a la Regla 4.6 de Procedimiento Civil;

C. Ordene la publicación del Emplazamiento por Edicto una sola vez en un periódico de circulación general en Puerto Rico;

D. Ordene que, dentro de los diez días siguientes a la publicación del edicto, EnergyX remita a Theodore Dilenschneider copia del emplazamiento y de la Demanda mediante correo certificado con acuse de recibo, o mediante otro servicio

autorizado de entrega de correspondencia con acuse de recibo, a su última dirección conocida de 436 Balch Road, Elgin, Texas 78621;

E. Ordene a la Secretaría expedir el correspondiente Emplazamiento por Edicto; y

F. Conceda cualquier otro remedio que en derecho proceda.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, 22 de julio de 2026.

**PEDRO ORTIZ ÁLVAREZ, LLC**
Apartado 9009
Ponce, Puerto Rico 00732-9009
Tel. (787) 841-7575
Fax (787) 841-0000

**f/ Joel Andrews Cosme Morales**
R.U.A. Núm. 22,607
Email: joel.cosme@poalaw.com

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
SALA SUPERIOR DE San Juan

| | |
|---|---|
| ENERGY EXPLORATION TECHNOLOGIES, INC D/B/A ENERGYX<br>PARTE DEMANDANTE<br><br>VS<br><br>THEODORE DILENSCHNEIDER<br>PARTE DEMANDADA | CASO NÚM. SJ2026CV06145<br>SALÓN NÚM: SALÓN 603<br><br>SOBRE: INCUMPLIMIENTO DE CONTRATO Y OTROS |

# NOTIFICACIÓN

A: FÉLIX A. COLÓN SERRANO
FELIX@CSZ.LAW

JOEL ANDREWS COSME MORALES
JOELCOSMEMORALES@GMAIL.COM

El (La) Secretario(a) que suscribe certifica y notifica a usted que con relación al(a la) SOLICITUD DE EMPLAZAMIENTO POR EDICTO [2] este Tribunal emitió una ORDEN el 29 de julio de 2026.

Se transcribe la determinación a continuación:

Acompáñese declaración jurada relacionada con la moción presentada en la entrada número [2] de SUMAC. Exprésese bajo juramento las diligencias que indican que el demandado está fuera de Puerto Rico.

Se concede un término de 10 días.

[3]

f/BRIAN BURGOS HERNÁNDEZ

SE LE ADVIERTE que al ser una parte o su representante legal en el caso sujeto a esta ORDEN, usted puede presentar un recurso de apelación, revisión o certiorari de conformidad con el procedimiento y en el término establecido por ley, regla o reglamento.

CERTIFICO que la determinación emitida por el Tribunal fue debidamente registrada y archivada hoy 29 de julio de 2026, y que se envió copia de esta notificación a las personas antes indicadas, a sus direcciones registradas en el caso conforme a la normativa aplicable. En esta misma fecha fue archivada en autos copia de esta notificación.

En San Juan, Puerto Rico, a 29 de julio de 2026.

| | |
|---|---|
| GRISELDA RODRIGUEZ COLLADO<br>Nombre del (de la)<br>Secretario(a) Regional | Por: f/ARELYS RIVERA MEDINA<br>Nombre y Firma del (de la)<br>Secretario(a) Auxiliar del Tribunal |

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**<br>Demandante | CIVIL NÚM. SJ2026CV06145 |
| | SALA NÚM. 603 |
| v. | SOBRE: |
| **THEODORE DILENSCHNEIDER**<br>Demandado | INCUMPLIMIENTO DE CONTRATO |

## MOCIÓN EN CUMPLIMIENTO DE ORDEN

AL TRIBUNAL DE PRIMERA INSTANCIA:

Comparece **Energy Exploration Technologies, Inc. d/b/a EnergyX** (en adelante "EnergyX"), representada por el abogado que suscribe y respetuosamente expone y solicita:

1. El 29 de julio de 2026 el Tribunal notificó Orden en la cual ordenó que se acompañe declaración jurada expresando las diligencias que indiquen que el demandado está fuera de Puerto Rico, como condición para que se autorice el emplazamiento por edicto.
2. En cumplimiento con ello, estamos sometiendo Declaración Jurada suscrita por Edgardo Rosado Santiago en relación a las diligencias realizadas que tienden a indicar que el demandado se encuentra fuera de Puerto Rico.
3. Se solicita que el Tribunal tenga por cumplida la Orden del 29 de julio de 2026, y ordene el emplazamiento del demandado Theodore Dilenschneider mediante la publicación de edictos.

EN MÉRITO DE LO AQUÍ EXPUESTO, **Energy Exploration Technologies, Inc. d/b/a EnergyX** solicita a este Tribunal que tenga por cumplida la Orden del 29 de julio de 2026, y ordene el emplazamiento del demandado Theodore Dilenschneider mediante la publicación de edictos, así como cualquier otro pronunciamiento que en derecho proceda.

CERTIFICO: haber radicado el presente escrito a través del Sistema Unificado de Manejo y Administración de Casos ("SUMAC"), que enviará notificación electrónica a todas las partes.

En San Juan, Puerto Rico, hoy 6 de agosto de 2026.

**COLÓN SERRANO ZAMBRANA, LLC**
PO Box 360610
San Juan, PR 00936-0610
Tel. 787-919-0026
felix@csz.law

***f/ Félix A. Colón-Serrano***
**Félix A. Colón-Serrano**
TSPR 17438

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
SALA SUPERIOR DE San Juan

ENERGY EXPLORATION TECHNOLOGIES, INC D/B/A ENERGYX
PARTE DEMANDANTE

VS

THEODORE DILENSCHNEIDER
PARTE DEMANDADA

CASO NÚM. SJ2026CV06145

SALÓN NÚM: SALÓN 603

SOBRE: INCUMPLIMIENTO DE CONTRATO Y OTROS

## NOTIFICACIÓN

A: FÉLIX A. COLÓN SERRANO
FELIX@CSZ.LAW

JOEL ANDREWS COSME MORALES
JOELCOSMEMORALES@GMAIL.COM

El (La) Secretario(a) que suscribe certifica y notifica a usted que con relación al(a la) MOCIÓN EN CUMPLIMIENTO DE ORDEN [4] este Tribunal emitió una ORDEN el 13 de agosto de 2026.

Se transcribe la determinación a continuación:
Se da por cumplida la orden de este tribunal. [5]

f/BRIAN BURGOS HERNÁNDEZ

SE LE ADVIERTE que al ser una parte o su representante legal en el caso sujeto a esta ORDEN, usted puede presentar un recurso de apelación, revisión o certiorari de conformidad con el procedimiento y en el término establecido por ley, regla o reglamento.

CERTIFICO que la determinación emitida por el Tribunal fue debidamente registrada y archivada hoy 14 de agosto de 2026, y que se envió copia de esta notificación a las personas antes indicadas, a sus direcciones registradas en el caso conforme a la normativa aplicable. En esta misma fecha fue archivada en autos copia de esta notificación.

En San Juan, Puerto Rico, a 14 de agosto de 2026.

GRISELDA RODRIGUEZ COLLADO
Nombre del (de la) Secretario(a) Regional

Por: f/ARELYS RIVERA MEDINA
Nombre y Firma del (de la) Secretario(a) Auxiliar del Tribunal

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC D/B/A ENERGYX**<br>Parte Demandante<br>V.<br>**THEODORE DILENSCHNEIDER**<br>Parte Demandada | **Caso Núm.:** SJ2026CV06145<br>**Sala:** Salón 603<br>**Sobre:**<br>SENTENCIA DECLARATORIA, INCUMPLIMIENTO DE CONTRATO |

**Orden**

Atendida la *Solicitud de Emplazamiento por Edic*to presentada el 22 de julio de 2026, por la parte demandante, el Tribunal la declara Con Lugar. En consecuencia, se le ordena a la Secretaría de este Tribunal que expida un edicto emplazando a la parte demandada **THEODORE DILENSCHNEIDER.**

El edicto se publicará una sola vez en un periódico de circulación general en la Isla de Puerto Rico y dentro de los días (10) días siguientes a su publicación se le enviará a la parte demandada, por correo certificado con acuse de recibo una copia de la demanda y del emplazamiento al lugar de su última dirección física o postal conocida.

**Tiene la parte demandante, treinta (30) días, a partir de la expedición del edicto, para presentar prueba del diligenciamiento del emplazamiento por edicto conforme la Regla 4.7 de las de Procedimiento civil de 2009, a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://www.poderjudicial.pr/index.php/tribunal-elctronico/, so pena de desestimación sin perjuicio.**

Notifíquese.
San Juan, Puerto Rico, hoy 14 de agosto de 2026.



Brian Burgos Hernández
Juez(a)

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE San Juan
SALA SUPERIOR DE San Juan

ENERGY EXPLORATION TECHNOLOGIES, INC D/B/A ENERGYX

VS

THEODORE DILENSCHNEIDER

CASO NÚM. SJ2026CV06145

SOBRE: INCUMPLIMIENTO DE CONTRATO Y OTROS

## NOTIFICACIÓN DE SECRETARÍA

A: JOEL ANDREWS COSME MORALES
JOELCOSMEMORALES@GMAIL.COM

Con relación al caso de epígrafe, el (la) Secretario(a) que suscribe le notifica a usted lo siguiente:

NO SE ACOMPAÑÓ EL PROYECTO DE EMPLAZAMIENTO POR EDICTO. POR LO QUE, DEBERÁ PRESENTAR EL PROYECTO CORRESPONDIENTE. EL CONTENIDO DEL MISMO DEBERÁ ESTAR CONFORME A LA ORDEN DEL TRIBUNAL DEL 14 DE AGOSTO DE 2026. TAN PRONTO PRESENTE EL PROYECTO PODRÁ SER EXPEDIDO POR LA SECRETARÍA CIVIL.

En San Juan, Puerto Rico, a 17 de agosto de 2026.

GRISELDA RODRIGUEZ COLLADO
Nombre del (de la)
Secretario(a) Regional

Por: f/KEREN OLIVERAS PADILLA
Nombre y Firma del (de la)
Secretario(a) Auxiliar del Tribunal

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**<br>Demandante<br><br>v.<br><br>**THEODORE DILENSCHNEIDER**<br>Demandado | **CIVIL NÚM.: SJ2026CV06145**<br><br>**SOBRE:**<br>**SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO.** |

**MOCIÓN EN CUMPLIMIENTO DE ORDEN**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante de epígrafe, **Energy Exploration Techonologies, Inc d/b/a EnergyX**, por conducto de la representación legal que suscribe y, muy respetuosamente, **EXPONE**:

1. El 22 de julio de 2026, EnergyX presentó la Demanda de epígrafe contra Theodore Dilenschneider ("Dilenschneider" o el "Demandado"), mediante la cual solicita, entre otros, remedios de sentencia declaratoria, incumplimiento de contrato y cumplimiento específico.

2. En esa misma fecha, EnergyX presentó una **Solicitud de Emplazamiento por Edicto**, mediante la cual solicitó autorización para emplazar al Demandado al amparo de la Regla 4.6 de Procedimiento Civil.

3. Luego de los trámites procesales correspondientes y de la presentación de la evidencia requerida por este Honorable Tribunal, el 14 de agosto de 2026 el Tribunal emitió una Orden mediante la cual declaró **Ha Lugar** la Solicitud de Emplazamiento por Edicto.

4. En dicha Orden, este Honorable Tribunal le ordenó a la Secretaría de este Tribunal que expida un edicto emplazando a la parte demandada THEODORE DILENSCHNEIDER. Asimismo, el Tribunal ordenó que el edicto sea publicado una sola vez en un periódico de circulación general en Puerto Rico y que, dentro de los diez (10) días siguientes a su publicación, se remita al Demandado, mediante correo certificado con acuse de recibo, copia de la Demanda y del emplazamiento a su última dirección física o postal conocida.

5. El Tribunal dispuso, además, que EnergyX tendrá un término de treinta (30) días, contado a partir de la expedición del edicto, para presentar mediante SUMAC prueba del diligenciamiento del emplazamiento por edicto conforme a la Regla 4.7 de Procedimiento Civil.

6. Posteriormente, mediante **Notificación de Secretaría** emitida el 17 de agosto de 2026, la Secretaría de este Honorable Tribunal notificó a EnergyX que no se había acompañado el correspondiente proyecto de emplazamiento por edicto y requirió su presentación para poder proceder con su expedición.

9. En cumplimiento con lo ordenado y requerido por la Secretaría, EnergyX acompaña con la presente moción el correspondiente **Proyecto de Emplazamiento por Edicto**, preparado conforme a la Orden emitida por este Honorable Tribunal el 14 de agosto de 2026 y a las disposiciones aplicables de las Reglas de Procedimiento Civil.

11. En consecuencia, habiéndose ya autorizado el emplazamiento mediante edicto y presentándose ahora el proyecto requerido por la Secretaría para su expedición, procede que este Honorable Tribunal tenga por cumplida su Orden y que la Secretaría expida el correspondiente Emplazamiento por Edicto para que EnergyX pueda diligenciarlo conforme a derecho.

POR TODO LO CUAL, Energy Exploration Technologies, Inc. d/b/a EnergyX solicita respetuosamente a este Honorable Tribunal que tenga por cumplida la Orden y la Notificación de Secretaría antes referidas; acepte el Proyecto de Emplazamiento por Edicto que se acompaña con la presente moción; ordene a la Secretaría la expedición del correspondiente Emplazamiento por Edicto conforme a la Orden de 14 de agosto de 2026; y conceda cualquier otro remedio que en derecho proceda.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, 18 de agosto de 2026.

**PEDRO ORTIZ ÁLVAREZ, LLC**
Apartado 9009
Ponce, Puerto Rico 00732-9009
Tel. (787) 841-7575
Fax (787) 841-0000

**f/ Joel Andrews Cosme Morales**
R.U.A. Núm. 22,607
Email: joel.cosme@poalaw.com

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX<br>Demandante<br><br>v.<br><br>THEODORE DILENSCHNEIDER<br>Demandado | CIVIL NÚM.: SJ2026CV06145<br><br>SOBRE:<br>SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO. |

EMPLAZAMIENTO POR EDICTO

ESTADO LIBRE ASOCIADO DE PUERTO RICO, SS
EL PRESIDENTE DE LOS ESTADO UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

A: Theodore Dilenschneider
436 Balch Road
Elgin, Texas 78621

Por la presente se le notifica que se ha presentado en su contra una demanda sobre Sentencia Declaratoria e Incumplimiento de Contrato, presentada por Energy Exploration Technologies, Inc. d/b/a EnergyX en la que se reclama mediante la cual solicita que se determinen y declaren los derechos y obligaciones de las partes bajo los acuerdos objeto del pleito, que se determine que usted ha incumplido sus obligaciones contractuales y que se ordene el cumplimiento específico de dichas obligaciones, junto con los demás remedios solicitados en la Demanda que procedan en derecho.

Se le apercibe que debe contestar la demanda dentro del plazo de 30 días contados a partir de la fecha de publicación de este edicto. Deberá presentar el original de su contestación ante este Tribunal y notificar copia de esta a la representación legal de la parte demandante.

Asimismo, conforme a la Orden emitida por este Tribunal el 14 de agosto de 2026, dentro de los diez (10) días siguientes a la publicación de este edicto, la parte demandante le remitirá, mediante correo certificado con acuse de recibo, una copia del emplazamiento y de la Demanda a su última dirección física o postal conocida. Copia de su contestación debe ser remitida al Lcdo. Joel A. Cosme Morales, abogado de la parte demandante, a su dirección en P. O. Box 9009, Ponce, PR 00732 y cuyo número telefónico es el (787) 841-7575.

El original de la contestación debe presentarse a través del Sistema Unificado para el Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del Tribunal de Primera Instancia de San Juan.

Se le apercibe que de no presentar una contestación durante el término señalado se le anotará la rebeldía, y se podrá dictar sentencia en su contra concediendo los remedios solicitados sin más citarle ni oírle.

En cumplimiento de Orden dictada por este Tribunal, expido el presente bajo mi firma y sello de este Tribunal, en San Juan, Puerto Rico, a _____ de agosto de 2026.

SECRETARIO DEL TRIBUNAL

SEC. AUXILIAR

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX<br>Demandante<br><br>v.<br><br>THEODORE DILENSCHNEIDER<br>Demandado | CIVIL NÚM.: SJ2026CV06145<br>(603)<br><br>SOBRE:<br>SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO. |

EMPLAZAMIENTO POR EDICTO

ESTADO LIBRE ASOCIADO DE PUERTO RICO, SS
EL PRESIDENTE DE LOS ESTADO UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

A: Theodore Dilenschneider
436 Balch Road
Elgin, Texas 78621

Por la presente se le notifica que se ha presentado en su contra una demanda sobre Sentencia Declaratoria e Incumplimiento de Contrato, presentada por Energy Exploration Technologies, Inc. d/b/a EnergyX en la que se reclama mediante la cual solicita que se determinen y declaren los derechos y obligaciones de las partes bajo los acuerdos objeto del pleito, que se determine que usted ha incumplido sus obligaciones contractuales y que se ordene el cumplimiento específico de dichas obligaciones, junto con los demás remedios solicitados en la Demanda que procedan en derecho.

Se le apercibe que debe contestar la demanda dentro del plazo de 30 días contados a partir de la fecha de publicación de este edicto. Deberá presentar el original de su contestación ante este Tribunal y notificar copia de esta a la representación legal de la parte demandante.

Asimismo, conforme a la Orden emitida por este Tribunal el 14 de agosto de 2026, dentro de los diez (10) días siguientes a la publicación de este edicto, la parte demandante le remitirá, mediante correo certificado con acuse de recibo, una copia del emplazamiento y de la Demanda a su última dirección física o postal conocida. Copia de su contestación debe ser remitida al Lcdo. Joel A. Cosme Morales, abogado de la parte demandante, a su dirección en P. O. Box 9009, Ponce, PR 00732 y cuyo número telefónico es el (787) 841-7575.

El original de la contestación debe presentarse a través del Sistema Unificado para el Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del Tribunal de Primera Instancia de San Juan.

Se le apercibe que de no presentar una contestación durante el término señalado se le anotará la rebeldía, y se podrá dictar sentencia en su contra concediendo los remedios solicitados sin más citarle ni oírle.

ESTADO LIBRE ASOCIADO DE PUERTO RICO TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE SAN JUAN TRIBUNAL GENERAL DE JUSTICIA

En cumplimiento de Orden dictada por este Tribunal, expido el presente bajo mi firma y sello de este Tribunal, en San Juan, Puerto Rico, a 18 de agosto de 2026.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN
TRIBUNAL GENERAL DE JUSTICIA

Griselda Rodríguez Collado
Secretaria Regional
SECRETARIO DEL TRIBUNAL

~~SEC. AUXILIAR~~

Keren Oliveras Padilla
Secretaria de servicios a Sala

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**<br>Demandante<br><br>v.<br><br>**THEODORE DILENSCHNEIDER**<br>Demandado | **CIVIL NÚM.: SJ2026CV06145**<br><br>**SOBRE:**<br>**SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO.** |

**MOCIÓN INFORMATIVA PARA ACREDITAR PUBLICACIÓN DEL EDICTO Y ENVÍO POR CORREO CERTIFICADO**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante de epígrafe, **Energy Exploration Techonologies, Inc d/b/a EnergyX**, por conducto de la representación legal que suscribe y, muy respetuosamente, **EXPONE**:

1. En el presente caso se expidió emplazamiento por edicto dirigido al demandado Theodore Dilenschneider, conforme al trámite autorizado por este Honorable Tribunal.

2. En cumplimiento con dicho trámite, el 20 de agosto de 2026 se publicó el correspondiente edicto en el periódico El Nuevo Día, según surge del afidávit emitido por un representante autorizado de dicho periódico y de la copia de la página en la cual aparece la publicación.

3. A los fines de acreditar lo anterior, se acompaña como Anejo I copia del referido afidávit, junto con evidencia de la publicación del edicto en la edición de El Nuevo Día correspondiente al 20 de agosto de 2026.

4. Asimismo, el 21 de agosto de 2026, la parte demandante remitió por correo certificado al demandado, copia de los documentos correspondientes al emplazamiento por edicto, junto con la documentación pertinente del presente pleito, a su última dirección conocida en:

Theodore Dilenschneider
436 Balch Road
Elgin, Texas 78621

5. A los fines de acreditar dicho envío, se acompaña como Anejo II copia del recibo de correo certificado expedido por el Servicio Postal de los Estados Unidos y como Anejo III la documentación postal adicional correspondiente al referido envío.

6. De esta manera, la parte demandante comparece ante este Honorable Tribunal a los fines de informar y acreditar la publicación del emplazamiento por edicto y su posterior envío por correo certificado a la última dirección conocida del demandado.

**POR TODO LO CUAL**, se solicita respetuosamente de este Honorable Tribunal que tome conocimiento de lo aquí informado, tenga por acreditada la publicación del edicto y el envío correspondiente por correo certificado al demandado Theodore Dilenschneider, y ordene cualquier otro pronunciamiento que en Derecho proceda.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, 27 de agosto de 2026.

**PEDRO ORTIZ ÁLVAREZ, LLC**
Apartado 9009
Ponce, Puerto Rico 00732
Tel. (787) 758-9356 / (787) 841-7575
Fax (787) 841-0000

**f/ Pedro E. Ortiz Álvarez**
RÚA Núm. 4,680
pedro@poalaw.com

**f/ Joel Andrews Cosme Morales**
R.ÚA. Núm. 22,607
joel.cosme@poalaw.com

EN EL TRIBUNAL DE PRIMERA INSTANCIA DE PUERTO RICO

**SALA: SUPERIOR DE SAN JUAN**

CIVIL NUM: **SJ2026CV06145**

**ENERGY EXPLORATIONTECHNOLOGIES, INC.D/B/A ENERGYX**

VS

**THEODORE DILENSCHNEIDER**

**SENTENCIA DECLARATORIA;INCUMPLIMIENTO DE CONTRATO;CUMPLIMIENTO ESPECÍFICO.**

# AFIDAVIT

Yo, Eliezer Martinez, habiendo prestado el debido juramento declaro:

Que soy Representante del periódico El Nuevo Dia que se publica en Guaynabo, P.R.; que en las ediciones de este periódico correspondientes a los días:

**20 de agosto de 2026**

se dio publicidad al edicto expedido por

**Griselda Rodríguez Collado**

en el caso arriba mencionado y copia del cual se une al presente afidávit para que forme parte del mismo.

San Juan, P.R. AUG 2 4 2026 20__.

______________________

Afidávit No. 15,769 del Registro.

Jurado y reconocido ante mi por Eliezer Martinez, vecino de Corozal, mayor de edad, soltero, Representante del periódico "El Nuevo Dia", a quien doy fe de conocer personalmente,

San Juan, P.R. AUG 2 4 2026 20__.

VIANICE CRUZ DE CHOUDENS
VCD
ABOGADA-NOTARIO

______________________
NOTARIO

**LCDO. PEDRO ORTIZ ALVAREZ**
**77750174**
20 de agosto de 2026
El Nuevo Dia
**CIVIL NUM: SJ2026CV06145**

por el ESTE, con Nelson Cintrón; y por el OESTE, con Jorge Salcedo.-------Contiene una estructura de madera techada en zinc dedicada a vivienda.---- No consta inscrita. Número de Catastro: 159-074-288-07-000 La parte promovente está representada por el LCDO. JOSE ENRIQUE ROBLES ROSARIO, RUA NÚM.: 5,748, 157 PEDRO ALBIZU CAMPOS LARES, PUERTO RICO 00669 TELÉFONO: 787-236-8143 Correo electrónico: laquaden@hotmail.com. Se le notifica a usted que este Tribunal ha ordenado su citación, para que presente oposición a este expediente, si se vissen perjudicados con la inscripción que se solicita; advirtiéndole que de no hacerlo dentro del término de veinte (20) días a contar desde que fuera usted notificado de esta citación, la Parte Peticionaria podrán solicitar y obtener la aprobación de este expediente de dominio y la correspondiente inscripción a su nombre en el Registro de la Propiedad el dominio de la finca anteriormente descrita. Usted deberá presentar su posición a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación en la secretaría del Tribunal. Si usted deja de presentar su alegación dentro del referido término, el Tribunal podrá dictar resolución, previo a escuchar la prueba de valor de la parte peticionaria, sin más citarle ni oírle, y conceder el remedio solicitado en la Petición, si el Tribunal, en el ejercicio de su sana discreción, lo entiende procedente. Por Orden de este Tribunal, expido la presente bajo mi firma y sello oficial. En Utuado, Puerto Rico, hoy día 12 de agosto de 2026. Marie C Cruz Candelaria Secretaria Carmencita Rivera Heredia Secretaria Auxiliar

**30150112**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL GENERAL DE JUSTICIA TRIBUNAL DE PRIMERA INSTANCIA SALA DE ARECIBO

**TONY VARGAS**
DEMANDANTE
VS.
**CARMEN HERNANDEZ**
DEMANDADA

CIVIL NUM: AR2026RF0063' SOBRE: DIVORCIO RUPTUR/ IRREPARABLE EMPLAZAMIENTO POR EDICTO: LOS ESTADOS UNIDOS DE AMÉRICA EL PRESIDENTE DI LOS EE.UU. EL ESTADO LIBRE ASOCIADO DE PUERTO RICO A:

**Carmen Hernández**
72-74 Mont Pleasant Ave, Apt 1, Newark, New Jersey 07104

POR LA PRESENTE se emplaza : requiere para que presente al tribuna su alegación responsiva dentro de lo treinta (30) días siguientes a l: publicación de este Edicto. Uste deberá presentar su alegación responsiva a través del Sistema Unificado de Manejo y Administrativo de Casos (SUMAC) al cual puede acceder utilizando l siguiente dirección electrónica https://unired.ramajudicial.pr/sumac/, salvo que se represente por derech propio, en cuyo caso deberá presenta su alegación responsiva en l: secretaría del tribunal. Si usted dej de presentar su alegación responsiv dentro del referido término, o tribunal podrá dictar sentencia e rebeldía en su contra y conceder e remedio solicitado en la demanda, cualquier otro, si el tribunal en e ejercicio de su sana discreción l entiende procedente. ANDY CORDERO ROSADO Abogado de l parte demandante 17582 Número de tribunal Supremo 111 GONZALC MARIN, ARECIBO, PR 0061: Dirección (787) 817-1779 Teléfon Este caso se trata de una demanda d Divorcio por la causal de Ruptur: Irreparable, y en consecuencia decret roto y disuelto el vínculo matrimonia existente entre TONY VARGAS : CARMEN HERNANDEZ EXTENDIDO BAJO MI FIRMA y e sello del Tribunal, en ARECIBO 2026. VIVIAN Y. FRESSE GONZALEZ Secretaria Tribuna DEYANEIRA RODRIGUEZ TOSADO Subsecretaria

**30150128**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL DI PRIMERA INSTANCIA SAL/ SUPERIOR DE CAGUAS

**LA POLA, LLC; MANUEL BLANCO ORTIZ; EILEEN CINTRÓN NADAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS**
Demandante
v.
**GRUPO F HEALTH CORPORATION; FRANK R. MEDINA RIVERA; ESTADO LIBRE ASOCIADO DE PUERTO RICO; NEGOCIADO DEL CUERPO DE BOMBEROS DE PUERTO RICO; COMPAÑÍA DE SEGUROS ABC; FULANO DE TAL**
Demandados

CIVIL NUM: CG2025CV0414: SOBRE: DAÑOS Y PERJUICIOS DAÑOS A LA PROPIEDAI (INCENDIO) EMPLAZAMIENTO Y NOTIFICACIÓN POR EDICTO ESTADOS UNIDOS DE AMÉRICA EL PRESIDENTE DE LOS ESTADOS UNIDOS ESTADO LIBRE ASOCIADO DI PUERTO RICO A:

**GRUPO F HEALTH CORPORATION**

Por la presente se le emplaza : requiere para que presente al Tribuna su alegación responsiva a la demand sobre daños y perjuicios y daños a l propiedad por razón de un incendio e pasado 3 de diciembre de 2024 en l propiedad ubicada en Villa Esperanza Calle Fe Número 47, Caguas, PI 00727. Usted deberá contestar l demanda dentro de los treinta (30 días a partir de la publicación de est edicto de emplazamiento descontando la fecha de s publicación. Usted deberá presenta su alegación responsiva a través de Sistema Unificado de Manejo : Administración de Casos (SUMAC al cual puede acceder utilizando l siguiente dirección electrónica https://unired.ramajudicial.pr/sumac/, salvo que se presente por derech propio, en cuyo caso deberá presentz su alegación responsiva en l secretaría del tribunal. Si usted dej de presentar su alegación responsiv dentro del referido término, e tribunal podrá dictar sentencia e rebeldía en su contra y conceder e remedio solicitado en la demanda, cualquier otro, si el tribunal, en e ejercicio de su sana discreción, l entiende prudente. Deberá notifica además a la representación legal de l parte demandante: LCDO. LUI MANUEL PAVÍA VIDAL T.S.P.R 14,805 URB. BALDRICH CALLI COLL & TOSTE #306 SAN JUAN P.R. 00918 TEL. (787) 622-699 Correo electrónico pavialaw@gmail.com EXPEDIDO BAJO MI FIRMA Y EL SELLO DEI TRIBUNAL, en Caguas, Puerto Rico a 14 de agosto de 2026. IRASEMI DÍAZ SÁNCHEZ Secretaria de Tribunal Por: MARTA E. DONAT RESTO Secretaria Auxiliar

**30150134**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL DI PRIMERA INSTANCIA SAL/ SUPERIOR DE CAGUAS

**OPTIMA SEGUROS**
DEMANDANTE
VS.
**JOSE VARGAS RODRIGUEZ, SORDANELA VARGAS APONTE y FULANO DE TAL**
DEMANDADO

CIVIL NUM: CG2026CV01161 Sal 801 SOBRE: SUBROGACION POI ACCIDENTE DE TRANSITC EMPLAZAMIENTO POR EDICTC ESTADOS UNIDOS DE AMÉRICA EL PRESIDENTE DE LLOS EE UU. . EL ESTADO LIBRI ASOCIADO DE PR A:

**JOSE VARGAS RODRIGUEZ SORDANELA VARGAS APONTE**

Por la presente de le emplaza y se l notifica que la parte demandante h presentado ante este Tribuna demanda del caso de epígrafe en s contra. Este Tribunal ha ordenado qu se le cite a usted por edicto que s publicará una sola vez en u periódico de circulación general Representa a la parte demandante, e Lcdo. Johnny Correa Noa, CORREA NOA. LAW OFFICE, LLC, Apartad 270064, San Juan, PR 00928-2864 Teléfono (787) 793-9756, fax (787 782-7654, correo electrónico johnnycorrea@yahoo.com. Debe presentar su alegación responsiva través del Sistema Unificado d manejo y Administración de Caso (SUMAC), al cual puede acceda utilizando la siguiente direcció electrónica: https://unired.ramajudicial.pr/sumac/, salvo que se represente por derech propio. Se le apercibe que, si n compareciere usted a contestar dich demanda dentro del término de 3( días de la publicación de este Edictc podrá dictarse sentencia en rebeldí en su contra concediendo el remedi solicitado en la demanda. Expedid bajo la firma y sello de este Tribuna En Caguas, Puerto Rico hoy, 17 d agosto de 2026. IRASEMIS DÍAZ SÁNCHEZ SECRETARIA REGIONAL Por: MARTA F DONATE RESTO SECRETARIA SERVICIOS A SALA

**30150164**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL DI PRIMERA INSTANCIA SALA DI ARROYO

**COOPERATIVA DE AHORRO Y CRÉDITO DE SALINAS**
Demandante
vs.
**JAZIEL OSVALDO SANTIAGO JR, JANE DOE Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS**
Demandados

CIVIL NUM.: AY2026CV0008: SOBRE: COBRO DE DINERO (VI/ ORDINARIA) EMPLAZAMIENTC POR EDICTO ESTADOS UNIDO: DE AMERICA EL PRESIDENTE DI LOS ESTADOS UNIDOS EI ESTADO LIBRE ASOCIADO DI PUERTO RICO A:

**JAZIEL OSVALDO SANTIAGO JR, JANE DOE Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS**

o sea, la parte codemandada arriba mencionada.

POR LA PRESENTE se le emplaz para que presente al tribunal si alegación responsiva dentro de lo treinta (30) días siguientes a l publicación de este edicto excluyéndose el día de la publicació del edicto. Usted deberá presentar s alegación responsiva a través de Sistema Unificado de Manejo y Administración de Casos (SUMAC) al cual puede acceder utilizando l siguiente dirección electrónica https://www.poderjudicial.pr/index.pl salvo que el caso sea de un expedient físico o que se represente por derech propio, en cuyo caso deberá presenta su alegación responsiva en l Secretaría del Tribunal y notifica copia de la misma al (a la)abogado (a de la parte demandante o a ésta, de n tener representación legal. Si uste deja de presentar su alegació responsiva dentro del referid término, el tribunal podrá dicta sentencia en rebeldía en su contra : conceder el remedio solicitado en l demanda, o cualquier otro, si e tribunal, en el ejercicio de su san discreción, lo entiende procedent Lcdo. Arturo Rafael Picó Valls RU/ 9,789 Edificio Marvesa 472 Ave. Tit Castro, Suite 404 Ponce, PR 00716 4704 Tel. 787-259-2801 Email picovalls@gmail.com Expedido baj mi firma y el sello del Tribunal, el dí 18 de agosto de 2026. MARISOl ROSADO RODRIGUEZ Secretari Regional Por: MARIA S RAMO: NEGRÓN Secretaria Auxiliar d Tribunal

**30150196**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL DI PRIMERA INSTANCIA TRIBUNAL DE FAMILIA Y MENORES SAL/ SUPERIOR DE BAYAMÓN

**ANGELICA CHRISTINA RUIZ VIRUET**
DEMANDANTE
VS
**JOSÉ LUIS ROSARIO VICENTE**
DEMANDADO

CIVIL NÚM. BY2026RF0139 SALÓN: 3001 SOBRE: Solicitud D Custodia Legal y Privación de Patri Potestad EMPLAZAMIENTO POI EDICTO ESTADOS UNIDOS DI AMERICA, EL PRESIDENTE DI LOS ESTADOS UNIDOS EI ESTADO LIBRE ASOCIADO DI PUERTO RICO A:

**JOSÉ LUIS ROSARIO VICENTE**
38554 HIGGINSON RD ZEPHYRHILLS FLORIDA, USA 33540

Por la presente se le notifica que en e caso de epígrafe se presentó Demand de Solicitud de custodia Legal : Patria Potestad de dos menores. Qu no habiendo sido posible emplazarl por usted residir fuera de l jurisdicción del Estado Libr Asociado de Puerto Rico, habiéndos presentado Demandas los efectos d que hay una justa causa de acció contra usted y habiendo est Honorable Tribunal, a solicitud de l Parte Demandante, autorizado a qu se le emplace por medio de edictc que se publicará una vez en u periódico de circulación diari general en la Isla de Puerto Rico, po la presente: Se le emplaza para qu presente al tribunal su alegació responsiva dentro de los treinta (30 días de haberse publicado el Edictc usted deberá presentar su alegació responsiva a través del Sistem Unificado de Manejo y Administración de Casos (SUMAC) al cual puede acceder utilizando l siguiente dirección electrónica: https //www poderjudicial.pr/index.php/tribunal-electronico/, salvo que se represent por derecho propio, en cuyo cas deberá presentar su alegació responsiva en la secretaría de Tribunal. Si usted deja de presentar s alegación responsiva dentro de referido termino, el tribunal podr dictar sentencia en rebeldía en s contra y conceder el remedi solicitado en la demanda, o cualquie otro, si el tribunal, en el ejercicio, d su sana discreción, lo entiend procedente. Deberá notificar el escrit radicado a: Lcda. Luz C. Valenti García RUA 13623 Carretera 865 Km 5.4, No. 224, Bo. Candelari Arenas en Toa Baja, Puerto Rico PC Box 3361, Bayamón, Puerto Ric 00958 Tels. 787-653-5838 / 787-653 5628 / 787-810-9568 corre electrónico: valentineslaw@yahoo.com Expido e presente edicto bajo mi firma y d este Tribunal. En Bayamón, Puert Rico, a 17 de agosto de 2026. Alici Ayala Sanjurjo Secretaria Regiona Por: IVETTE RIOS VASQUEZ Secretaria Auxiliar del Tribunal I

**77750044**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL DI PRIMERA INSTANCIA SAL/ SUPERIOR DE AGUADILLA

**CATHERINE ÁVILA GONZÁLEZ; EDWIN ÁVILA GONZÁLEZ, representado por su apoderada la SRA. MARÍA DE LOS ÁNGELES BAIGÉS FUENTES**
Demandantes
v.
**DAVID ÁVILA GONZÁLEZ**
Demandado

CASO NÚM.: AG2026CV0109' SALA NÚM.: SOBRE LIQUIDACION DE COMUNIDAI HEREDITARIA EMPLAZAMIENTO POR EDICTC ESTADOS UNIDOS DE AMERICA SS EL PRESIDENTE DE LO: ESTADOS UNIDOS EL ESTADC LIBRE ASOCIADO DE PUERTC RICO A:

**DAVID ÁVILA GONZÁLEZ**

HC 01 BOX 61201 MOCA, PF 00676 O sea, la parte demandad: arriba mencionada. DE: CATHERINI ÁVILA GONZÁLEZ; EDWIN ÁVILA GONZÁLEZ, representad por su apoderada la SRA. MARÍA DI LOS ÁNGELES BAIGÉS FUENTES P/C LCDO. CARLOS E. RIVER/ RODRÍGUEZ (8718) P.O. BOX 384 MAYAGÜEZ, PR 00681 TEL. 787 477-6450 carlosriveraradz@hotmail.com POI LA PRESENTE se le emplaza y se l notifica que una demanda ha sid presentada en su contra y se l requiere para que conteste la demand dentro de los treinta (30) día siguientes a la publicación de est Edicto. Usted deberá presentar si alegación responsiva a través de Sistema Unificado de Manejo Administración de Casos (SUMAC) al cual podrá acceder utilizando l siguiente dirección electrónica https://tribunalelectronico.ramajudici salvo que se represente por derech propio, en cuyo caso deberá presenta su alegación responsiva en l secretaría del tribunal. Si usted dej de presentar su alegación responsiv dentro del referido término, e tribunal podrá dictar sentencia en e rebeldía en su contra y conceder e remedio solicitado en la demanda, o cualquier otro, si el tribunal en e ejercicio de su sana discreción lo entiendo procedente sin citarlo ni oírl más. EXTENDIDO BAJO M FIRMA Y EL SELLO DEI TRIBUNAL, en Mayagüez, Puert Rico, hoy día 4 de AGOSTO de 2026 SARAH REYES PEREZ Secretario(a) del Tribunal Por: IDITI N. GONZALEZ NUÑEZ Secretario(a) Auxiliar

**77750137**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL DI PRIMERA INSTANCIA SAL/ SUPERIOR DE PONCE

**MARITZA IVETTE SANTIAGO QUIÑONES EN REPRESENTACIÓN DE HÉCTOR WILLIAM SANTIAGO MALDONADO**
PETICIONARIA
VS
**HÉCTOR WILLIAM SANTIAGO QUIÑONES, ET. AL**
PETICIONADOS

CIVIL NUM. PO2026RF0050( SOBRE: DECLARACIÓN DI INCAPACIDAD Y NOMBRAMIENTO DE TUTOI EDICTO A:

**Noelia Jeanete Santiago Gonzáles**

La parte peticionaria ha presentad ante este Tribunal una Petición contr usted solicitando el siguient remedio: Declaración de incapacidad y Nombramiento de Tutor. Uste deberá presentar su contestación : través del Sistema Unificado d Manejo y Administración de Caso (SUMAC), al cual pueden accede utilizando la siguiente direcció electrónica: https://unired.ramajudicial.pr, salv que se represente por derech propio, en cuyo caso deberá presentar su contestación en l secretaría del tribunal. Se le apercib que si no compareciera a contesta dicha Petición dentro del término d Treinta (30) días a partir de la fech de publicación de este Edicto, se l anotará la rebeldía y se le dictar sentencia concediendo el remedi solicitado sin más citarle ni oírle Debe notificar con copia de s contestación a la representación lega de la promovente, Lcdo. José Rafae Santiago Pereles a su dirección 61 Ave. Tito Castro Suite 204, L Rambla Plaza, Ponce, P.R. 00716 · con número de teléfono 787-974 8813. En Ponce, Puerto Rico, a 17 d agosto de 2026. CARMEN G. TIRU QUINONES SECRETARI/ REGIONAL Mary Ann León Rosari Secretaria Auxiliar

**77750165**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAI GENERAL DE JUSTICI/ TRIBUNAL DE PRIMER/ INSTANCIA SALA MUNICIPAL DI SAN JUAN

**EVIE LUZ TORRES RUTHERFORD por sí y en Rep. De EAR**
Parte Peticionaria
Vs.
**RYAN RIDDLE RUTHERFORD**
Parte Peticionada

CIVIL NUM.: SJ2026MU0801· SALA: SOBRE: OPA - Ley 54 & Le 57 EMPLAZAMIENTO POI EDICTO ESTADOS UNIDOS DI AMÉRICA EL PRESIDENTE DI LOS ESTADOS UNIDOS EI ESTADO LIBRE ASOCIADO DI PUERTO RICO A:

**RYAN RIDDLE RUTHERFORD Mississippi, Estados Unidos**

POR LA PRESENTE se le emplaz para que presente al tribunal si alegación responsiva a la demand dentro de los treinta (30) días d haber sido diligenciado est emplazamiento, excluyéndose el dí del diligenciamiento, notificand copia de la misma al (a la) abogado(a de la parte demandante o a ésta, de n tener representación legal. Si ustc deja de presentar su alegació responsiva dentro del referid término, el tribunal podrá dicta sentencia en rebeldía en su contra · conceder el remedio solicitado en l demanda, o cualquier otro, si e tribunal, en ejercicio de su san discreción, lo entiende procedente Usted deberá presentar su alegació responsiva a través del Sistem Unificado de Administración · Manejo de Casos (SUMAC), al cua puede acceder utilizando la siguient dirección electrónica https://unired.ramajudicial.pr, salv que se represente por derecho propic en cuyo caso deberá presentar si alegación responsiva en la secretari del tribunal. ATT: Lcda. Barbie L Roman RUA 22839 815 Call Esmeralda San Juan, PR 00926 Tel 787-547-6275 Barbieleeromanesq@gmail.com Expedido bajo mi firma y sello de Tribunal, hoy 10 de AGOSTO d 2026 GRISELDA RODRIGUEZ COLLADO Nombre del Secretario(a SOLESNIR CAMPUDON CARABALLO Nombre del Sub Secretario(a)

**77750174**
ESTADO LIBRE ASOCIADO DI PUERTO RICO TRIBUNAL DI PRIMERA INSTANCIA SAL/ SUPERIOR DE SAN JUAN

**ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**
Demandante
v.
**THEODORE DILENSCHNEIDER**
Demandado

CIVIL NÚM.: SJ2026CV06145 (603 SOBRE: SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO. EMPLAZAMIENTO POR EDICTO ESTADO LIBRI ASOCIADO DE PUERTO RICO, S EL PRESIDENTE DE LOS ESTADC UNIDOS EL ESTADO LIBRI ASOCIADO DE PUERTO RICO A:

**Theodore Dilenschneider**
436 Balch Road Elgin, Texas 7862

Por la presente se le notifica que se h presentado en su contra una demand sobre Sentencia Declaratoria Incumplimiento de Contrato presentada por Energy Exploratio Technologies, Inc. d/b/a EnergyX e la que se reclama mediante la cua solicita que se determinen y declare los derechos y obligaciones de la partes bajo los acuerdos objeto de pleito, que se determine que usted h incumplido sus obligacione contractuales y que se ordene e cumplimiento específico de dicha obligaciones, junto con los demá remedios solicitados en la Demand que procedan en derecho. Se l apercibe que debe contestar l demanda dentro del plazo de 30 día contados a partir de la fecha d publicación de este edicto. Deber presentar el original de n contestación ante este Tribunal · notificar copia de esta a l representación legal de la part demandante. Asimismo, conforme la Orden emitida por este Tribunal e 14 de agosto de 2026, dentro de lo diez (10) días siguientes a l publicación de este edicto, la part demandante le remitirá, mediant correo certificado con acuse d recibo, una copia del emplazamient y de la Demanda a su última direcció física o postal conocida. Copia de s contestación debe ser remitida a Ledo. Joel A. Cosme Morales abogado de la parte demandante, a s dirección en P. O. Box 9009, Ponce PR 00732 y cuyo número telefónic es el (787) 841-7575. El original de l contestación debe presentarse a travé del Sistema Unificado para el Manej y Administración de Caso (SUMAC), al cual puede acceda utilizando la siguiente direcció electrónica: https://unired.ramajudicial.pr, salv que se represente por derecho propic en cuyo caso deberá presentar si alegación responsiva en la secretari del Tribunal de Primera Instancia d San Juan. Se le apercibe que de n presentar una contestación durante e término señalado se le anotará l rebeldía, y se podrá dictar sentenci en su contra concediendo lo remedios solicitados sin más citarlo n oírle. En cumplimiento de Orde dictada por este Tribunal, expido e presente bajo mi firma y sello de est Tribunal, en San Juan, Puerto Rico, 18 de agosto de 2026. Griseld Rodríguez Collado Secretari Regional SECRETARIO DEI TRIBUNAL Keren Oliveras Padill Secretaria de servicios a Sala SEC AUXILIAR-

**99950145**
ESTADO LIBRE ASOCIADO DE PUERTO RICO TRIBUNAL DE PRIMERA INSTANCIA SALA DE YAUCO EN SABANA GRANDE

**COOP DE AHORRO Y CREDITO DE DE YAUCO**
Demandante
vs
**EMMANUEL CASTRO PACHECO**
Demandado

Civil num YU2026cv00258 sobre cobro de dinero ordinario EMPLAZAMIENTO POR EDICTO ESTADOS UNIDOS DE AMÉRICA EL PRESIDENTE DE LOS EE. UU. SS: EL ESTADO LIBRE ASOCIADO DE PR

**A: EMMANUEL CASTRO PACHECO**
M106 CALLE 1 LAS PELAS YAUCO PR 00698

POR LA PRESENTE se le notifica para que presente al tribunal su alegación responsiva a la demanda dentro de los treinta (30) días a partir de la fecha de la publicación de este edicto, notificando a su vez con copia de dicha contestación a la Demanda, al abogado de la parte demandante, BUFETE JUAN DE JESÚS Vélez, CALLE CESARI #4, YAUCO, PUERTO RICO, 00698, TEL. (787) 856-4544. Usted deberá presentar su alegación responsiva a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede accedar utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del tribunal. Si usted deja de presentar su alegación responsiva dentro del referido término, el tribunal podrá dictar sentencia en rebeldía en su contra y conceder el remedio solicitado en la demanda, o cualquier otro, si el tribunal, en el ejercicio de su sana discreción, lo entiende procedente, sin más citarle ni oirle. Extendido bajo mi firma y sello del Tribunal, en Yauco, Puerto Rico, hoy 17 de agosto de 2026. Carmen G Tiru Quiñones Secretaria Yashmir Pabon Ortiz Secretaria Auxiliar

**99950153**
ESTADO LIBRE ASOCIADO DE PUERTO RICO TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE CAROLINA

**ONITY LOAN ACQUISITION TRUST 2025-HB2,**
Demandante
vs
**ANGEL LUIS CAMACHO ARROYO T/C/C ANGEL LUIS CAMACHO T/C/C ANGEL L. CAMACHO ARROYO T/C/C ANGEL L. CAMACHO; B CRUZ MARIA RODRIGUEZ SANTANA T/C/C CRUZ MARIA RODRIGUEZ DE CAMACHO T/C/C CRUZ M. RODRIGUEZ SANTANA T/C/C CRUZ M. RODRIGUEZ DE CAMACHO T/C/C CRUZ M. RODRIGUEZ DE CAMACHO T/C/C CRUZ MA. RODRIGUEZ Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS; ESTADOS UNIDOS DE AMERICA**
Demandados

Civil num CA2026CV02441 sobre ejecución de hipoteca EMPLAZAMIENTO POR EDICTO Estados Unidos de América Presidente de los Estados Unidos S. S. Estado Libre Asociado de Puerto Rico

**A: B CRUZ MARIA RODRIGUEZ SANTANA T/C/C CRUZ MARIA RODRIGUEZ DE CAMACHO T/C/C CRUZ M. RODRIGUEZ SANTANA T/C/C CRUZ M. RODRIGUEZ DE CAMACHO T/C/C CRUZ M. RODRIGUEZ DE CAMACHO T/C/C CRUZ MA. RODRIGUEZ por sí y en representación de la Sociedad Legal de Bienes Gananciales compuesta con ANGEL LUIS CAMACHO ARROYO T/C/C ANGEL LUIS CAMACHO T/C/C ANGEL L. CAMACHO ARROYO T/C/C ANGEL L. CAMACHO**

Por la presente se le emplaza para que presente al tribunal su alegación responsiva dentro de los treinta (30) días de haber sido publicado este emplazamiento excluyéndose el día de la publicación. Se le advierte, que al tiempo de hacerse la primera publicación de este edicto se le está enviando por correo certificado, una copia del emplazamiento y de la demanda, al lugar de su última dirección conocida. Usted deberá presentar su alegación responsiva a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://www.poderjudicial.pr/index.php/tribunal-electronico/,, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del tribunal. Si usted deja de presentar su alegación responsiva dentro del referido término, el tribunal podrá dictar sentencia en rebeldía en su contra y conceder el remedio solicitado en la demanda, o cualquier otro, si el tribunal, en el ejercicio de su sana discreción, lo entiende procedente. Se le requiere para que notifique a los abogados de la Parte Demandante a ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, P.L.L.C., al 100 CLL Acuarela Suite #303 Guaynabo, PR 00969; Tel. 787-988-7135; e-mail: prservice@raslg.com, con copia de su contestación a la demanda de Ejecución de Hipoteca. EXPEDIDO bajo mi firma y con el Sello del Tribunal. DADA hoy 17 de agosto de 2026, en Carolina, Puerto Rico. Lcda. Kanelly Zayas Robles Secretaria LOURDES DÍAZ MEDINA Sec Aux

**99950155**
ESTADO LIBRE ASOCIADO DE PUERTO RICO TRIBUNAL DE PRIMERA INSTANCIA SALA DE BAYAMON

**RAUL ALBERTO CANDELARIO LOPEZ**
Demandante
vs
**JANIRA MICHELLE JAIME CASTRO**
Demandado

CIVIL NÚM: BY2026RF00609 SALA: 4002 vs SOBRE: DIVORCIO RUPTURA IRREPARABLE EMPLAZAMIENTO POR EDICTO ESTADOS UNIDOS DE AMERICA EL PRESIDENTE DE LOS EE. UU. SS. ESTADO LIBRE ASOCIADO DE P.R.

**A: Janira Michelle Jaime Castro.**
Su dirección física 765 60th Ave. Vero Beach FL 32968 y postal 6002 Indrio Rd. Apt.2 Fort Pierce FL 34951

POR LA PRESENTE se le emplaza para que presente al tribunal su alegación responsiva a la Demanda dentro de los treinta (30) días de haber sido diligenciado este emplazamiento, excluyendo el día del diligenciamiento, notificando copia de la misma al abogado de la parte demandante. Usted deberá presentar su alegación responsiva a través del Sistema Unificado de Administración y Manejo de Casos (SUMAC) al cual puede acceder utilizando la siguiente dirección electrónica: https://tribunalelectronico.ramajudicial.pr. salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la Secretaría del Tribunal radicando el original de su contestación y notificando copia de la misma a los abogados de la parte demandante. Lcda. Alexandra Acosta Caban, con número de RUA 18993, cuya dirección postal es: Calle Esteban Padilla 60-E Bayamón, Puerto Rico 00959; teléfono 787-786-3466; y correo electrónico: alexandraacosta4@hotmail.com. Si usted deja de presentar su alegación responsiva dentro del referido término, el tribunal podrá dictar sentencia en rebeldía en su contra y conceder el remedio solicitado en la demanda, o cualquier otro, sin más citarle ni oírle, si el tribunal, en el ejercicio de su sana discreción, entiende que procede. EXTENDIDO BAJO MI FIRMA Y CON EL SELLO DEL TRIBUNAL, hoy día 14 de agosto de 2026. Alicia Ayala Sanjurjo Secretaria Wilmary Rodriguez Rivera Secretaria Auxiliar

**99950157**
ESTADO LIBRE ASOCIADO DE PUERTO RICO TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE PONCE

**INTERIOR SYSTEMS INC**
Demandante
v.
**FULANO DE TAL Y ZUTANO DE TAL COMO PORTADORES DESCONOCIDOS**
Demandados

Civil num PO2026CV02643 sala num 601 sobre declaración de extravío cancelación de pagare y cancelación de hipoteca EMPLAZAMIENTO POR EDICTO ESTADO UNIDOS DE AMERICA EL PRESIDENTE DE LOS ESTADOS UNIDOS EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

**A: FULANO DE TAL Y ZUTANO DE TAL COMO PORTADORES DESCONOCIDOS**

Por la presente quedan notificados que INTERIOR SYSTEMS INC., radicó en este Tribunal una demanda alegando que por la escritura 103 otorgada el día 1 de agosto de 2019 ante el notario público, Manuel A. Frau Cataseis, Interior Systems Group Inc., constituyó hipoteca para garantizar el pago de un pagaré a favor del Portador, o a su orden, por la suma de $305,000.00 con intereses al 2% sobre el interés referencial "Prime Rate", vencedero a la presentación sobre el inmueble identificado como finca 9487, ubicada en el Barrio Canas de Ponce, Puerto Rico, con una cabida 2,162.9937 metros cuadrados, e inscrita al folio 213 del tomo 673 de Ponce, Registro de la Propiedad de Puerto Rico, Sección Segunda de Ponce, inscripción sexta. El importe garantizado por el pagaré a que se ha hecho referencia fue totalmente satisfecho a su acreedor y no ha podido ser cancelado por no haberse podido localizar el original del mismo, solicitándose en su consecuencia la cancelación judicial de dicho pagaré y de

pressreader PRINTED AND DISTRIBUTED BY PRESSREADER PressReader.com +1 604 278 4604 COPYRIGHT AND PROTECTED BY APPLICABLE LAW

9589 0710 5270 2416 3639 43

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Edicto Energyx

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy) $
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postage
$
Total Postage and Fees
$

Postmark Here

AUG 21 20

*Sent To* Theodore Dilenschneider
*Street and Apt. No., or* 436 Balch Road
*City, State, ZIP+4®* Elgin, Texas 78621

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

FIRST-CLASS

US POSTAGE PITNEY BOWES

ZIP 00730
02 7H
0006055024

$ 013.63º
AUG 21 2026

**PEDRO ORTIZ ÁLVAREZ LLC**
ATTORNEYS AND COUNSELORS AT LAW
P. O. BOX 9009
Ponce, Puerto Rico 00732-9009

**TO:**

Theodore Dilenschneider
436 Balch Road
Elgin, Texas 78621

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Theodore Dilenschneider
436 Balch Road
Elgin, Texas 78621

9590 9402 6922 1104 0956 81

2. Article Number (Transfer from service label)
9589 0710 5270 2416 3639 43

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Edicto EnergyX

...the following benefits:
...an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.
...restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).
...sure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.
IMPORTANT: Save this receipt for your records.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
SALA SUPERIOR DE San Juan

ENERGY EXPLORATION TECHNOLOGIES, INC D/B/A ENERGYX
PARTE DEMANDANTE

VS

THEODORE DILENSCHNEIDER
PARTE DEMANDADA

CASO NÚM. SJ2026CV06145

SALÓN NÚM: SALÓN 603

SOBRE: INCUMPLIMIENTO DE CONTRATO Y OTROS

## NOTIFICACIÓN

A: FÉLIX A. COLÓN SERRANO
FELIX@CSZ.LAW

JOEL ANDREWS COSME MORALES
JOELCOSMEMORALES@GMAIL.COM

PEDRO E. ORTIZ ÁLVAREZ
TPINOTIFICACION@POALAW.COM

El (La) Secretario(a) que suscribe certifica y notifica a usted que con relación al(a la) INFORMATIVA PARA ACREDITAR PUBLICACIÓN DEL EDICTO Y ENVÍO POR CORREO CERTIFICADO [10] este Tribunal emitió una ORDEN el 27 de agosto de 2026.

Se transcribe la determinación a continuación:
El tribunal toma conocimiento de lo informado. [11]

f/BRIAN BURGOS HERNÁNDEZ

SE LE ADVIERTE que al ser una parte o su representante legal en el caso sujeto a esta ORDEN, usted puede presentar un recurso de apelación, revisión o certiorari de conformidad con el procedimiento y en el término establecido por ley, regla o reglamento.

CERTIFICO que la determinación emitida por el Tribunal fue debidamente registrada y archivada hoy 28 de agosto de 2026, y que se envió copia de esta notificación a las personas antes indicadas, a sus direcciones registradas en el caso conforme a la normativa aplicable. En esta misma fecha fue archivada en autos copia de esta notificación.

En San Juan, Puerto Rico, a 28 de agosto de 2026.

GRISELDA RODRIGUEZ COLLADO
Nombre del (de la) Secretario(a) Regional

Por: f/MICHELLE RIVERA RIOS
Nombre y Firma del (de la) Secretario(a) Auxiliar del Tribunal

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**<br>Demandante<br><br>v.<br><br>**THEODORE DILENSCHNEIDER**<br>Demandado | **CIVIL NÚM.: SJ2026CV06145**<br><br>**SOBRE:**<br>**SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO.** |

**MOCIÓN EN SOLICITUD DE ANOTACIÓN DE REBELDÍA Y DE SENTENCIA POR LAS ALEGACIONES**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante de epígrafe, **Energy Exploration Techonologies, Inc d/b/a EnergyX**, por conducto de la representación legal que suscribe y, muy respetuosamente, **EXPONE**:

1. El 22 de julio de 2026, Energy Exploration Technologies, Inc. d/b/a EnergyX presentó la Demanda de epígrafe contra Theodore Dilenschneider, mediante la cual solicitó sentencia declaratoria, remedios por incumplimiento contractual y cumplimiento específico de las obligaciones que surgen de los acuerdos entre las partes.

2. Conforme al trámite autorizado por este Honorable Tribunal mediante su Orden de 14 de agosto de 2026, el 18 de agosto de 2026 se expidió el emplazamiento por edicto dirigido al demandado. Este le apercibió expresamente de su obligación de contestar la Demanda dentro de los treinta (30) días siguientes a la publicación y de que, si no lo hacía, podría anotársele la rebeldía y dictarse sentencia concediendo los remedios solicitados. Véase, Entrada Núm. 8 de SUMAC.

3. El emplazamiento por edicto se publicó en el periódico El Nuevo Día el 20 de agosto de 2026. Al día siguiente, 21 de agosto de 2026, la parte demandante efectuó el envío por correo certificado a la última dirección conocida del demandado: 436 Balch Road, Elgin, Texas 78621. La publicación y el envío fueron acreditados mediante la Moción Informativa presentada el 27 de agosto de 2026, junto con el afidávit de publicación, la copia del edicto publicado, el recibo de correo certificado y la documentación postal correspondiente. Véase, Entrada Núm. 10 de SUMAC y sus Anejos I, II y III.

4. El término de treinta (30) días para contestar, computado desde la publicación del edicto, culminaba inicialmente el sábado, 19 de septiembre de 2026. Por aplicación de la Regla 68.1 de

Procedimiento Civil, su vencimiento se extendió al lunes, 21 de septiembre de 2026. Transcurrido dicho término, el demandado no ha presentado contestación a la Demanda ni alegación o moción mediante la cual se defienda de las reclamaciones formuladas, y tampoco consta una prórroga concedida que mantenga vigente su término para responder.

5. Ante esa incomparecencia, procede que se anote la rebeldía de Theodore Dilenschneider conforme a la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V. El demandado fue apercibido del término disponible para defenderse y de las consecuencias de no hacerlo. Su inacción no debe prolongar indefinidamente la incertidumbre sobre la titularidad de las acciones y el alcance de las obligaciones contractuales que motivaron este pleito.

6. La anotación de rebeldía tiene el efecto de dar por admitidas las alegaciones fácticas bien formuladas de la Demanda. Aunque ello no releva al Tribunal de examinar si esos hechos justifican los remedios solicitados, sí permite adjudicar la reclamación sobre esa base, sin exigir que la parte demandante vuelva a establecer mediante un juicio ordinario cada hecho debidamente alegado y admitido por efecto de la rebeldía. Por consiguiente, se solicita que, una vez anotada, el Tribunal dicte sentencia conforme a la Regla 45.2(b) de Procedimiento Civil.

7. La reclamación principal descansa en hechos concretos y disposiciones contractuales identificadas detalladamente en la Demanda. Entre ellos, se alegó que las partes suscribieron un Consulting Services Agreement; que posteriormente otorgaron un Restricted Stock Award Agreement con fecha de concesión de 9 de mayo de 2019; y que la compensación accionaria quedó sujeta a dicho acuerdo y al Special Equity Incentive Plan. Estos instrumentos condicionaron la consolidación de las acciones a la prestación continua de servicios hasta las fechas correspondientes, prohibieron la consolidación parcial o proporcional antes de esas fechas y dispusieron la pérdida automática de las acciones no consolidadas al terminar el Continuous Service. Véanse, entre otras, las alegaciones 55–80 de la Demanda.

8. Asimismo, se alegó que la relación de servicios terminó el 24 de octubre de 2019, antes de que transcurriera el primer periodo de seis meses desde la fecha de concesión del Restricted Stock Award Agreement. La Demanda identifica, además, las disposiciones que extinguen los derechos de accionista respecto de las acciones sujetas a forfeiture. Admitidos esos hechos y aplicadas las condiciones contractuales alegadas, procede declarar que el demandado no consolidó las acciones reclamadas y que no conserva los derechos derivados de estas. Véanse las alegaciones 89–91 y 241–264 de la Demanda.

9. La Demanda reconoce y atiende expresamente la carta de 8 de noviembre de 2019, en la cual se hizo referencia a 313 acciones preferidas Series A-2 y 625 acciones comunes como acciones consolidadas. Se alegó que esa referencia obedeció a un error de cálculo, interpretación, caracterización o administración; que la carta no fue suscrita por ambas partes; y que no constituyó una actuación formal de la Junta de Directores o del Comité para acelerar la consolidación, modificar el award o renunciar a las condiciones aplicables. Por tanto, se solicita que el Tribunal examine conjuntamente esos hechos y las disposiciones contractuales invocadas, y declare que dicha comunicación no produjo la modificación contractual ni la adquisición de derechos accionarios que el demandado le atribuye. Véanse las alegaciones 241–318 de la Demanda.

10. De igual modo, se solicita que se adjudique el efecto del memorando de conversión de 19 de octubre de 2021 y de las comunicaciones informales posteriores, conforme a los hechos alegados y al marco contractual descrito en la Demanda. La posición de EnergyX es que esos documentos no constituyeron una enmienda válida a los acuerdos rectores ni subsanaron la falta de consolidación de las acciones originales. Tampoco establecieron una participación accionaria fija, garantizada, permanente o no diluible de 0.938%. Véanse las alegaciones 319–346 y 362–367 de la Demanda.

11. Según se alegó, el demandado reclama o amenaza con reclamar una condición de accionista y derechos corporativos que EnergyX niega, lo cual afecta sus registros corporativos, su estructura de capital y sus relaciones con inversionistas y terceros. La sentencia declaratoria solicitada permitirá determinar los derechos de las partes bajo los instrumentos objeto del pleito y despejar esa incertidumbre. En consecuencia, procede declarar que Dilenschneider no es accionista de EnergyX por virtud de los acuerdos y documentos aquí controvertidos y que no posee los derechos accionarios derivados de estos que reclama en contravención de sus términos.

12. En cuanto a la segunda causa de acción, la Demanda identifica la obligación de Non-Disparagement asumida por el demandado, su supervivencia contractual y las conductas concretas que se le imputan. En particular, se alegó que este se comunicó con representantes de TXK Today y del Texarkana Gazette y suministró información, declaraciones y acusaciones adversas que promovieron publicaciones sobre EnergyX y sus oficiales. Se solicita que, sobre los hechos bien alegados que queden admitidos, el Tribunal determine el incumplimiento contractual imputado y conceda el cumplimiento específico que proceda. Véanse las alegaciones 34–47, 373–389 y 399–401 de la Demanda.

Case 3:26-cv-01709-GMM Document 1-1 Filed 11/04/26 Page 74 of 91



13. La orden de cumplimiento específico solicitada deberá identificar con precisión las conductas prohibidas y quedar limitada a las obligaciones contractuales válidas y exigibles que el Tribunal determine aplicables. Asimismo, una vez adjudicada la controversia sobre titularidad, se solicita que se ordene al demandado abstenerse de atribuirse ante terceros los derechos accionarios que la sentencia declare inexistentes, con las salvedades para comunicaciones requeridas por orden judicial o proceso legal aplicable. Estos remedios se solicitan dentro del alcance de la Demanda y sin extenderlos a una prohibición general de expresión.

14. Solo en la alternativa de que el Tribunal determine que el demandado conserva alguna acción o interés accionario derivado de los acuerdos objeto del pleito, EnergyX mantiene su tercera causa de acción sobre recompra y cumplimiento específico. La concesión de ese remedio deberá descansar en la determinación de que se cumplieron los eventos activadores y los requisitos temporales y de notificación establecidos en la Sección 10 del Restricted Stock Award Agreement. De resultar procedente, se solicita que se ordene la transferencia de la totalidad de las acciones sujetas a la opción, contra el pago o consignación del precio contractual correspondiente, así como la ejecución de los instrumentos necesarios para efectuarla.

15. Los remedios principales solicitados son declaratorios y de cumplimiento específico; por ello, su adjudicación no depende necesariamente de la liquidación de una partida de daños. Si el Tribunal entiende que necesita prueba adicional para resolver algún extremo, se solicita que, conforme a la Regla 45.2(b), señale una vista limitada a ese asunto, manteniendo el efecto de la rebeldía sobre los hechos bien alegados. Ello permitirá atender cualquier necesidad probatoria concreta sin posponer innecesariamente la adjudicación de los remedios que el expediente permita conceder.

POR TODO LO CUAL, Energy Exploration Technologies, Inc. d/b/a EnergyX solicita respetuosamente que este Honorable Tribunal anote la rebeldía de Theodore Dilenschneider; tenga por admitidas las alegaciones fácticas bien formuladas de la Demanda; dicte sentencia en rebeldía concediendo los remedios declaratorios y de cumplimiento específico que procedan conforme a dichas alegaciones y al derecho aplicable; en la alternativa, señale una vista limitada a los extremos que requieran prueba adicional para dictar sentencia; y conceda las costas y los honorarios de abogado que procedan, junto con cualquier otro pronunciamiento compatible con los remedios reclamados en la Demanda.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, 22 de septiembre de 2026.

**PEDRO ORTIZ ÁLVAREZ, LLC**
Apartado 9009
Ponce, Puerto Rico 00732-9009
Tel. (787) 841-7575
Fax (787) 841-0000

**f/ Joel Andrews Cosme Morales**
R.U.A. Núm. 22,607
Email: joel.cosme@poalaw.com

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**<br>Demandante<br><br>v.<br><br>**THEODORE DILENSCHNEIDER**<br>Demandado | **CIVIL NÚM.: SJ2026CV06145**<br><br>**SOBRE:**<br>**SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO.** |

**MOCIÓN PARA SOMETER PROYECTO DE SENTENCIA**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte demandante de epígrafe, **Energy Exploration Techonologies, Inc d/b/a EnergyX**, por conducto de la representación legal que suscribe y, muy respetuosamente, **EXPONE**:

1. En el presente caso, la parte demandada, Theodore Dilenschneider, fue emplazada mediante edicto conforme al trámite autorizado por este Honorable Tribunal.

2. La parte demandante acreditó oportunamente ante este Honorable Tribunal tanto la publicación del correspondiente edicto como el envío por correo certificado de la documentación pertinente a la última dirección conocida del demandado.

3. Transcurrido el término aplicable sin que el demandado compareciera, contestara la Demanda o formulara defensa alguna, se anotó su rebeldía en el presente caso.

4. En atención al estado procesal del caso y a la rebeldía de la parte demandada, la parte demandante somete conjuntamente con esta moción un **Proyecto de Sentencia**, para la consideración y aprobación de este Honorable Tribunal.

5. Mediante dicho proyecto se solicita que este Honorable Tribunal adjudique los remedios reclamados en la Demanda conforme a sus alegaciones, la documentación obrante en el expediente y el estado de rebeldía del demandado.

POR TODO LO CUAL, se solicita respetuosamente de este Honorable Tribunal que tome conocimiento de lo aquí informado, tenga por sometido el Proyecto de Sentencia que se acompaña y, previa su consideración, dicte Sentencia conforme a Derecho y a los remedios solicitados por la parte demandante.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, 5 de octubre de 2026.

**PEDRO ORTIZ ÁLVAREZ, LLC**
Apartado 9009
Ponce, Puerto Rico 00732-9009
Tel. (787) 841-7575
Fax (787) 841-0000

f/ Joel Andrews Cosme Morales
R.U.A. Núm. 22,607
Email: joel.cosme@poalaw.com

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE San Juan

| | |
|---|---|
| ENERGY EXPLORATION TECHNOLOGIES, INC D/B/A ENERGYX<br>PARTE DEMANDANTE<br><br>VS<br><br>THEODORE DILENSCHNEIDER<br>PARTE DEMANDADA | CASO NÚM. SJ2026CV06145<br>SALÓN NÚM: SALÓN 603<br><br>SOBRE: SENTENCIA DECLARATORIA Y OTROS |

## NOTIFICACIÓN

A: FÉLIX A. COLÓN SERRANO
FELIX@CSZ.LAW

JOEL ANDREWS COSME MORALES
JOELCOSMEMORALES@GMAIL.COM

PEDRO E. ORTIZ ÁLVAREZ
TPINOTIFICACION@POALAW.COM

El (La) Secretario(a) que suscribe certifica y notifica a usted que con relación al(a la) SOLICITUD PARA QUE SE DICTE ORDEN [13] , ANOTACIÓN DE REBELDÍA Y/O PARA QUE SE DICTE SENTENCIA EN REBELDÍA [12] este Tribunal emitió una ORDEN el 29 de octubre de 2026.

Se transcribe la determinación a continuación:

Este tribunal resolverá oportunamente.

[14]

f/BRIAN BURGOS HERNÁNDEZ

SE LE ADVIERTE que al ser una parte o su representante legal en el caso sujeto a esta ORDEN, usted puede presentar un recurso de apelación, revisión o certiorari de conformidad con el procedimiento y en el término establecido por ley, regla o reglamento.

CERTIFICO que la determinación emitida por el Tribunal fue debidamente registrada y archivada hoy 29 de octubre de 2026, y que se envió copia de esta notificación a las personas antes indicadas, a sus direcciones registradas en el caso conforme a la normativa aplicable. En esta misma fecha fue archivada en autos copia de esta notificación.

En San Juan, Puerto Rico, a 29 de octubre de 2026.

| | |
|---|---|
| GRISELDA RODRIGUEZ COLLADO<br>Nombre del (de la) Secretario(a) Regional | Por: f/MYRNA D. VILLEGAS TRINIDAD<br>Nombre y Firma del (de la) Secretario(a) Auxiliar del Tribunal |

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **ENERGY EXPLORATION TECHNOLOGIES, INC. D/B/A ENERGYX**<br>PARTE DEMANDANTE<br><br>**VS**<br><br>**THEODORE DILENSCHNEIDER**<br>PARTE DEMANDADA | **CIVIL NÚM.: SJ2026CV06145**<br><br>**SALA: 603**<br><br>**SOBRE:**<br><br>**SENTENCIA DECLARATORIA; INCUMPLIMIENTO DE CONTRATO; CUMPLIMIENTO ESPECÍFICO.** |

## SENTENCIA

Examinadas la Demanda presentada por Energy Exploration Technologies, Inc. d/b/a EnergyX (EnergyX), el 22 de julio de 2026, y la Moción en solicitud de anotación de rebeldía y de sentencia por las alegaciones presentada el 22 de septiembre de 2026, el Tribunal declara CON LUGAR las reclamaciones principales de sentencia declaratoria y cumplimiento específico contra Theodore Dilenschneider. Esta determinación se fundamenta en los hechos bien alegados admitidos por efecto de la rebeldía y en la aplicación de las disposiciones contractuales que se exponen a continuación.

### I. TRÁMITE PROCESAL Y REBELDÍA

El 14 de agosto de 2026 se autorizó el emplazamiento del demandado por edicto. El emplazamiento se expidió el 18 de agosto de 2026 y se publicó en El Nuevo Día el 20 de agosto de 2026. El 21 de agosto de 2026 se efectuó el envío por correo certificado a su última dirección conocida, 436 Balch Road, Elgin, Texas 78621. La publicación y el envío se acreditaron mediante la Moción Informativa de 27 de agosto de 2026 y sus anejos, identificados en la Entrada Núm. 10 de SUMAC. El edicto apercibió al demandado del término para contestar y de las consecuencias de su incomparecencia.

El término de treinta días para contestar vencía inicialmente el sábado, 19 de septiembre de 2026, y se extendió al lunes, 21 de septiembre de 2026,

conforme a la Regla 68.1 de Procedimiento Civil. El demandado no contestó la Demanda, no compareció para defenderse y no obtuvo una prórroga que mantuviera vigente su término para responder. La demandante solicitó la anotación de rebeldía y la adjudicación de sus reclamaciones mediante la Entrada Núm. 12 de SUMAC.

Conforme a las Reglas 45.1 y 45.2(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1 y R. 45.2(b), se anota la rebeldía del demandado. Quedan admitidos los hechos bien alegados, pero el Tribunal examina de forma independiente si estos sostienen los remedios reclamados. Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 589–590 (2011). Los hechos admitidos y los términos contractuales transcritos en la Demanda permiten resolverlos sin una vista adicional. La sentencia se limita a la naturaleza de los remedios solicitados, conforme a la Regla 42.4, 32 LPRA Ap. V, R 42.4.

Conforme a las Reglas 45.1 y 45.2(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1 y R. 45.2(b), se anota la rebeldía del demandado. Quedan admitidos los hechos bien alegados, pero el Tribunal examina de forma independiente si estos sostienen los remedios reclamados. Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 589–590 (2011). Los hechos admitidos y los términos contractuales transcritos en la Demanda permiten resolverlos sin una vista adicional. La sentencia se limita a la naturaleza de los remedios solicitados, conforme a la Regla 42.4, 32 LPRA Ap. V, R 42.4.

## II. DETERMINACIONES DE HECHOS

Sobre la base de los hechos bien alegados de la Demanda, admitidos por efecto de la rebeldía, el Tribunal formula las siguientes determinaciones:

1. EnergyX es una corporación organizada bajo las leyes de Puerto Rico, inscrita bajo el número 419978. Dilenschneider es mayor de edad y reside en Estados Unidos. Las partes pactaron la ley de Puerto Rico y consintieron expresamente a la jurisdicción de sus tribunales para las controversias relacionadas con el "Consulting Services Agreement." Demanda, 1–2 y 43–44.

2. En abril de 2019 las partes suscribieron el "Consulting Services Agreement", con término inicial efectivo el 15 de abril de 2019. Dilenschneider prestaría servicios de "Chief Scientific Officer" como contratista independiente. La compensación accionaria quedó sujeta a un "Award Agreement" separado, a un plan de incentivos y a un calendario de consolidación o vesting. Demanda, 3–24.

3. El "Consulting Services Agreement" contempló 5,000 acciones comunes y 2,500 acciones preferidas, distribuidas mediante "vesting" durante cuatro años, en períodos de seis meses. La referencia a aproximadamente 7.5% describía la concesión inicial contemplada y no establecía una participación perpetua o no diluible. Demanda, 14 21.

4. El 9 de mayo de 2019 las partes otorgaron el "Restricted Stock Award Agreement", cuyo "Grant Date" es esa misma fecha. El "award" comprendió 5,000 acciones comunes y 2,500 acciones preferidas Series A-2, sujeto a las restricciones del acuerdo y del "Special Equity Incentive Plan". El Plan fue adoptado por la Junta de Directores y aprobado por los accionistas el 9 de mayo de 2019. Demanda, 55–65 y 236–237.

5. La Sección 3.1 del "Restricted Stock Award Agreement" condicionó el "vesting" a que Dilenschneider permaneciera en "Continuous Service" hasta la fecha correspondiente. El calendario comenzó con un primer tramo de 12.5% seis meses después del "Grant Date" y contempló tramos sucesivos de 12.5% hasta completar cuarenta y ocho meses. La misma sección prohibió expresamente el "vesting" parcial o proporcional antes de cada fecha aplicable. Demanda, 67–74.

6. Las Secciones 3.1 y 3.2 del "Restricted Stock Award Agreement" dispusieron la pérdida inmediata y automática, o "forfeiture", de todas las acciones no consolidadas cuando terminara el "Continuous Service" por cualquier razón. El Plan definió "Continuous Service" como la prestación de



ID: 20DBDF34-94B1-441D-8943-B2962B1DEEB0 Firmado Electrónicamente: 29/10/2026 04:24:29 pm

servicios como "Chief Science Officer" o en una posición equivalente sin interrupción ni terminación. Demanda, 75–78 y 145–147.

7. La Sección 5.1 del "Restricted Stock Award Agreement" reconoció derechos de accionista sobre las acciones restringidas, sujetos a sus demás disposiciones. La Sección 5.3 dispuso que esos derechos, incluidos voto y dividendos, terminarían en la fecha del "forfeiture." La Sección 5.2(a)(C) del Plan dispuso igualmente la terminación de los derechos sobre las acciones perdidas y de los derechos de accionista correspondientes. Demanda, 84–91 y 185–190.

8. El Plan confirió a la Junta de Directores facultades de administración, interpretación, modificación y aceleración del "vesting", así como facultades de delegación. Los "awards" y sus enmiendas debían sujetarse a los mecanismos autorizados por el Plan. Demanda, 154–170, 191–196, 201–202 y 216–221.

9. Los servicios de Dilenschneider y el "Consulting Services Agreement" terminaron el 24 de octubre de 2019. Esa fecha precedió la primera fecha aplicable de "vesting" bajo el "Restricted Stock Award Agreement"; no habían transcurrido seis meses desde el "Grant Date" del 9 de mayo de 2019. Demanda, 245 y 249–261. 10. El 8 de noviembre de 2019 EnergyX remitió a Dilenschneider una carta titulada "RE: Cessation of Services." La carta confirmó la terminación del acuerdo el 24 de octubre de 2019 e indicó que el demandado tenía 313 acciones preferidas Series A-2 y 625 acciones comunes "vested", sin derecho a consolidación futura. La referencia a acciones "vested" respondió a un error de cálculo, interpretación, caracterización o administración del "award." Demanda, 241–254.

11. La carta no fue ejecutada por ambas partes ni suscrita por Dilenschneider; tampoco constituyó una acción formal de la Junta de Directores o del Comité bajo el Plan. No expresó una decisión de acelerar el "vesting", dispensar el "Continuous Service", permitir "vesting parcial",



ID: 20DBDF34-94B1-441D-8943-B2962B1DEEB0 Firmado Electrónicamente: 29/10/2026 04:24:29 pm

renunciar al "forfeiture" o aprobar una emisión independiente de acciones consolidadas. Demanda, 269–300.

12. La Sección 18(f) del "Consulting Services Agreement" requirió un instrumento escrito ejecutado por ambas partes para modificarlo o enmendarlo. La carta y el correo que la transmitió no contenían una enmienda contractual ni una resolución de la Junta o determinación del Comité. Demanda, 48–50, 267–275 y 308–317.

13. La carta del 8 de noviembre de 2019 no reconoció un porcentaje de 0.938% ni una participación fija, permanente, garantizada o no diluible. El "Consulting Services Agreement", el "Restricted Stock Award Agreement" y el Plan tampoco concedieron un derecho a conservar perpetuamente un porcentaje fijo frente a emisiones, financiamientos o cambios posteriores en la estructura de capital. Demanda, 19–21, 127–128, 239–240 y 300–307.

14. El 19 de octubre de 2021 Dilenschneider firmó el "Memorandum to EnergyX - Conversion of Founders 2 Preferred Stock", mediante el cual notificó una elección de convertir 93,900 acciones preferidas que decía poseer en igual número de acciones comunes. El memorando no fue una enmienda a los acuerdos de 2019 ni una actuación formal de la Junta que corrigiera, ratificara, acelerara o modificara el "vesting" del "award." Las comunicaciones de texto de octubre de 2021 fueron informales y no constituyeron una enmienda ni una actuación corporativa de esa naturaleza. Demanda, 319–335.

15. Dilenschneider ha reclamado o amenazado con reclamar que es accionista de EnergyX y que posee derechos accionarios, preferentes, económicos, anti-dilución, de inspección, voto, conversión o porcentuales. La incertidumbre afecta los registros y la estructura de capital de EnergyX, sus relaciones con inversionistas y terceros, su reputación y sus procesos de financiamiento. Demanda, 348–349, 366–369 y 380 386.

16. El "Consulting Services Agreement" contiene una obligación recíproca de Non "Disparagement." Esta prohíbe publicar, circular, expresar,

diseminar o causar la diseminación, directa o indirectamente, de declaraciones, comentarios o materiales que reflejen desfavorablemente sobre la reputación de la otra parte o dañen sus negocios u operaciones. La Sección 18(b) dispuso que las Secciones 7 a 18 sobrevivirían la terminación del acuerdo. Demanda, 34–35 y 46–47.

17. Dilenschneider se comunicó directa o indirectamente con representantes, periodistas y editores de TXK Today y del Texarkana Gazette y les suministró información, declaraciones y acusaciones adversas contra EnergyX. Promovió publicaciones que atribuyeron a EnergyX haberlo expulsado injustamente durante una crisis de salud, reducido indebidamente su participación accionaria, privado de derechos corporativos, ocultado información material y actuado de forma engañosa respecto de sus alegadas acciones. Estas comunicaciones tenían el propósito o el efecto previsible de perjudicar la reputación y las relaciones comerciales de EnergyX. Demanda, 399.

18. La Sección 13 del "Consulting Services Agreement" reconoció el daño irreparable que produciría el incumplimiento real o amenazado de las cláusulas restrictivas y contempló injunction permanente y cumplimiento específico. La difusión de las acusaciones descritas y de la condición accionaria reclamada afecta relaciones comerciales, reputación y financiamiento, con consecuencias que una indemnización posterior no permite reparar plenamente. Demanda, 36–41 y 382–386.

## III. CONCLUSIONES DE DERECHO

### A. Jurisdicción y sentencia declaratoria:

El Tribunal tiene jurisdicción para interpretar los acuerdos y adjudicar los derechos controvertidos entre las partes, conforme al consentimiento de foro contenido en la Sección 16 del "Consulting Services Agreement" y al emplazamiento autorizado. Existe una controversia actual: el demandado se atribuye una condición accionaria y derechos que EnergyX niega, con efectos



ID: 20DBDF34-94B1-441D-8943-B2962B1DEEB0 Firmado Electrónicamente: 29/10/2026 04:24:29 pm

sobre la capitalización y las relaciones de la compañía. Las Reglas 59.1 y 59.2, 32 LPRA Ap. V, R. 59.1 y R. 59.2, permiten resolverla mediante sentencia declaratoria. Los pronunciamientos de esta sentencia despejan esa incertidumbre entre las partes y se circunscriben a los derechos reclamados bajo los instrumentos objeto del pleito.

**B. Régimen contractual y pérdida de las acciones no consolidadas:**

Los acuerdos se otorgaron en 2019. Sus efectos se rigen por el Código Civil de 1930, conforme al Artículo 1812 del Código Civil de 2020, 31 LPRA § 11717. Los Artículos 1044 y 1207 del Código de 1930, 31 LPRA §§ 2994 y 3372, reconocen la obligatoriedad de lo pactado dentro de los límites de ley y orden público. Los Artículos 1233 y 1237, 31 LPRA §§ 3471 y 3475, exigen atender los términos claros y la relación entre las cláusulas. Los Artículos 1051 y 1052, 31 LPRA §§ 3015 y 3016, permiten exigir el cumplimiento de obligaciones de hacer y no hacer. La compensación accionaria debe examinarse conjuntamente bajo el "Consulting Services Agreement", el "Restricted Stock Award Agreement" y el Plan. El primero remitió expresamente al "award" y al Plan y el segundo incorporó las condiciones que determinaron cuándo se consolidaban las acciones y cuándo se perdían. El "Grant Date" fue el 9 de mayo de 2019, de modo que la fecha inicial de los servicios del 15 de abril de 2019 no sustituye aquella para computar el "vesting". Al terminar el "Continuous Service" el 24 de octubre de 2019 no se había completado el primer período de seis meses. La prohibición de consolidación parcial impide reconocer un derecho proporcional por el tiempo servido.

En consecuencia, todas las acciones pendientes de "vesting" quedaron sujetas a "forfeiture" automático el 24 de octubre de 2019. El reconocimiento inicial de derechos de accionista en la Sección 5.1 no modifica ese resultado: la Sección 5.3 del mismo acuerdo extinguió esos derechos cuando ocurrió el "forfeiture", y la Sección 5.2(a)(C) del Plan dispuso la misma consecuencia. El

Tribunal distingue, por tanto, los derechos iniciales condicionados sobre acciones restringidas de una titularidad consolidada que sobreviviera la terminación. No quedó una participación accionaria vigente a favor del demandado bajo estos instrumentos.

**C. Efecto de la carta de 2019 y las comunicaciones posteriores:**

La referencia errónea a 313 acciones preferidas y 625 acciones comunes "vested" no constituye, por sí sola, una modificación de las reglas que determinaron su consolidación y pérdida. En cuanto al "Consulting Services Agreement", no se cumplió el requisito de la Sección 18(f) de un instrumento escrito ejecutado por ambas partes. En cuanto al "award" y al Plan, la conclusión no descansa simplemente en el carácter unilateral de la carta: el Plan sí permitía decisiones de la Junta y el ejercicio de facultades debidamente delegadas. Lo determinante es que la carta, según los hechos admitidos, no fue una actuación autorizada de aceleración, modificación o renuncia a las restricciones, sino una comunicación de cesación de servicios que contenía una caracterización errónea del "award".

La carta no expresó una voluntad contractual de sustituir el régimen de "vesting" ni documentó el ejercicio de la autoridad corporativa correspondiente. La Sección 12.1 del Plan, además, contempló expresamente la corrección de excesos derivados de errores de cálculo o administración. Su lectura es incompatible con convertir automáticamente ese error en una concesión irrevocable. Los actos posteriores se han considerado en conjunto con los acuerdos, como exige el Artículo 1234 del Código Civil de 1930, 31 LPRA § 3472; en los hechos aquí admitidos, no constituyeron una enmienda ni una ratificación corporativa del "vesting" que faltó.

El memorando de 19 de octubre de 2021 notificó la elección del demandado de convertir las acciones que reclamaba. Esa elección presupone una titularidad susceptible de conversión y no reemplaza las condiciones incumplidas del award original. Por ello, ni el memorando, ni las



ID: 20DBDF34-94B1-441D-8943-B2962B1DEEB0 Firmado Electrónicamente: 29/10/2026 04:24:29 pm

comunicaciones informales, ni los ajustes o conversiones que se pretendan derivar de aquellas acciones restituyeron los derechos extinguidos por forfeiture. Tampoco existe base contractual para una participación fija, garantizada, permanente o no diluible de 0.938%, ni para preservar ese porcentaje frente a cambios posteriores en el capital.

**D. Incumplimiento y cumplimiento específico:**

Las comunicaciones extrajudiciales descritas en la determinación de hechos 17 incumplieron la obligación de "Non-Disparagement", que sobrevivió la terminación contractual. Las reclamaciones y amenazas de atribuirse derechos accionarios mantienen el riesgo de comunicaciones a inversionistas, medios y terceros que afecten el gobierno corporativo, los negocios y el financiamiento de EnergyX. La cláusula remedial de la Sección 13 apoya el cumplimiento específico, pero el Tribunal evalúa también los presupuestos del remedio permanente de forma independiente.

Para los fines de la Regla 57.5, EnergyX prevalece en la adjudicación de sus reclamaciones principales; una compensación económica posterior no evita ni repara plenamente la difusión continuada de esas acusaciones y reclamaciones. El balance de equidades favorece exigir la obligación pactada y evitar que el demandado presente derechos declarados inexistentes como hechos establecidos. El interés público favorece la certeza de los registros corporativos y el cumplimiento de obligaciones válidas, a la vez que exige preservar el acceso a los tribunales y las comunicaciones protegidas por ley. Por ello, se concede un remedio limitado a las conductas descritas en la parte dispositiva. La orden identifica esas conductas conforme a la Regla 57.6 y preserva las comunicaciones requeridas o protegidas por el ordenamiento.

Por los fundamentos expuestos, el Tribunal anota la rebeldía de Theodore Dilenschneider, declara CON LUGAR las reclamaciones principales de la Demanda y dispone lo siguiente y se declara que esa carta no constituyó una enmienda válida al "Consulting Services Agreement", al "Restricted Stock



ID: 20DBDF34-94B1-441D-8943-B2962B1DEEB0 Firmado Electrónicamente: 29/10/2026 04:24:29 pm

Award Agreement" ni al "Special Equity Incentive Plan"; se declara que la carta no aceleró el "vesting", no dispensó ni renunció al requisito de "Continuous Service", no eliminó la prohibición de "vesting" parcial o proporcional, no dejó sin efecto las disposiciones de "forfeiture" y no creó acciones "vested" a favor de Dilenschneider. Las acciones no consolidadas y los derechos asociados quedaron extinguidos por efecto de la terminación del "Continuous Service" el 24 de octubre de 2019; se declara que Dilenschneider no es accionista de EnergyX por virtud de los acuerdos y documentos objeto de este pleito y que no posee las acciones ni los derechos preferentes, anti-dilución, de inspección, voto, económicos, conversión o porcentuales, ni la participación fija, garantizada o no diluible que reclama o amenaza con reclamar bajo esos instrumentos. Ello comprende las 313 acciones preferidas Series A-2 y las 625 acciones comunes mencionadas en la carta, así como las 93,900 acciones invocadas en el memorando de conversión de 2021 y cualesquiera derechos pretendidos exclusivamente a partir de su conversión, sustitución o ajuste. Se declara que Dilenschneider no posee una participación accionaria fija, garantizada, permanente o no diluible de 0.938% en EnergyX, ni un derecho que obligue a la compañía a conservar ese porcentaje frente a futuras emisiones, financiamientos, recapitalizaciones, conversiones, cambios en su estructura de capital o transacciones corporativas.

Se ordena a Dilenschneider cumplir específicamente con la cláusula de "Non Disparagement" del "Consulting Services Agreement." Para hacer efectiva esa obligación respecto de las conductas adjudicadas, se le prohíbe publicar, circular, expresar, diseminar o causar que se publiquen o diseminen, directa o indirectamente, por sí o mediante personas que actúen de acuerdo con él, las siguientes acusaciones o representaciones ante la prensa, inversionistas, socios comerciales, clientes, proveedores, competidores u otros terceros:

a) Que EnergyX lo expulsó injustamente durante una crisis de salud, redujo indebidamente su participación accionaria, lo privó de derechos



ID: 20DBDF34-94B1-441D-8943-B2962B1DEEB0 Firmado Electrónicamente: 29/10/2026 04:24:29 pm

corporativos, ocultó información material o actuó de forma engañosa respecto de las acciones reclamadas en este litigio; se incluyen las acusaciones de ese contenido promovidas ante TXK Today y el Texarkana Gazette.

b) Que EnergyX incumple una obligación de reconocerle las acciones o los derechos declarados inexistentes en esta sentencia, de preservar a su favor una participación no diluible de 0.938% o de permitirle ejercer facultades corporativas derivadas de esas acciones.

c) Que la carta de 8 de noviembre de 2019, el memorando de conversión de 19 de octubre de 2021 o las comunicaciones informales de octubre de 2021 le confieren los derechos accionarios que esta sentencia declara inexistentes, presentando esa afirmación como hecho establecido para desacreditar a EnergyX o perjudicar sus negocios u operaciones.

Esta orden comprende comunicaciones orales, escritas y electrónicas, entrevistas, publicaciones en redes sociales y entrega de materiales a terceros para su difusión, en cuanto reproduzcan o promuevan las acusaciones o representaciones específicamente prohibidas. Su alcance queda sujeto a las excepciones que se consignan a continuación.

Se ordena a Dilenschneider abstenerse de representarse ante terceros como accionista de EnergyX o como titular de derechos accionarios, preferentes, anti-dilución, económicos, de inspección, voto, conversión o porcentuales de EnergyX declarados inexistentes en esta sentencia, incluida una participación fija o no diluible de 0.938%. La orden comprende atribuirse esa condición oralmente, por escrito o por medios electrónicos, y utilizar la carta de 2019, el memorando de 2021 o las comunicaciones informales para presentarla como vigente.

Se exceptúan las representaciones requeridas por orden judicial o proceso legal aplicable y las autorizadas expresamente por este Tribunal. Las órdenes tampoco impiden presentar alegaciones, prueba o recursos por las vías

procesales pertinentes; consultar confidencialmente a su representación legal; prestar testimonio veraz requerido; ni efectuar comunicaciones con autoridades competentes que estén requeridas o protegidas por ley. Las prohibiciones no se extienden a expresiones ajenas a las conductas específicamente descritas. Las órdenes obligan al demandado y, dentro de los límites de la Regla 57.6, a quienes actúen de acuerdo o participen activamente con él y reciban aviso de estas.

Al acogerse la reclamación principal de inexistencia de una participación accionaria vigente, no se activa el supuesto de la tercera causa de acción, formulada exclusivamente en la alternativa para el caso de que se reconocieran acciones al demandado.

Regístrese y notifíquese esta Sentencia. Por tratarse de un demandado emplazado por edicto que no compareció, Secretaría expedirá el aviso de notificación de sentencia por edicto previsto en la Regla 65.3(c). La demandante publicará el aviso una vez en un periódico de circulación general en Puerto Rico dentro de los diez días siguientes a su notificación y enviará copia del aviso publicado por correo certificado con acuse de recibo a la última dirección conocida del demandado dentro de los diez días siguientes a la publicación. Acreditará ambas gestiones en autos. El aviso informará el término para apelar y la publicación regirá el cómputo de los términos conforme a esa regla.

**REGÍSTRESE Y NOTIFÍQUESE.**

En San Juan, Puerto Rico, a 29 de octubre de 2025.



**BRIAN BURGOS HERNÁNDEZ**
**JUEZ SUPERIOR**

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE SAN JUAN**
SALA SUPERIOR DE SAN JUAN

ENERGY EXPLORATION TECHNOLOGIES, INC D/B/A ENERGYX
Demandante

v.

THEODORE DILENSCHNEIDER
Demandado(a)

Caso Núm.: SJ2026CV06145 (SALÓN 603)

Sobre: SENTENCIA DECLARATORIA Y OTROS

FÉLIX A. COLÓN SERRANO
FELIX@CSZ.LAW

JOEL ANDREWS COSME MORALES
JOELCOSMEMORALES@GMAIL.COM

PEDRO E. ORTIZ ÁLVAREZ
TPINOTIFICACION@POALAW.COM

## NOTIFICACIÓN DE SENTENCIA POR EDICTO

(Nombre de las partes que se le notifican la sentencia por edicto)

A: THEODORE DILENSCHNEIDER
436 BALCH ROAD
ELGIN, TEXAS 78621

EL SECRETARIO(A) que suscribe le notifica a usted que el 29 DE OCTUBRE DE 2026, este Tribunal ha dictado Sentencia, Sentencia Parcial o Resolución en este caso, que ha sido debidamente registrada y archivada en autos donde podrá usted enterarse detalladamente de los términos de la misma.

Esta notificación se publicará una sola vez en un periódico de circulación general en la Isla de Puerto Rico, dentro de los 10 días siguientes a su notificación.

Y, siendo o representando usted una parte en el procedimiento sujeta a los términos de la Sentencia, Sentencia Parcial o Resolución, de la cual puede establecerse recurso de revisión o apelación dentro del término de **30** días contados a partir de la publicación por edicto de esta notificación, dirijo a usted esta notificación que se considerará hecha en la fecha de la publicación de este edicto.

Copia de esta notificación ha sido archivada en los autos de este caso, con fecha de 30 de OCTUBRE de 2026

En SAN JUAN , Puerto Rico, el 30 de OCTUBRE de 2026

GRISELDA RODRIGUEZ COLLADO
Nombre del (de la) Secretario(a)

f/JANE VILLEGAS DIAZ
Nombre y Firma del (de la) Secretario(a) Auxiliar del Tribunal